A09A0403. HAYES v. THE STATE.

(680 SE2d 182)

BLACKBURN, Presiding Judge.

Linda Hayes appeals from the trial court's denial of her motion to dismiss an indictment charging her with aggravated assault,[1] aggravated battery,[2] and cruelty to children,[3] arguing that any prosecution under this indictment would violate her right to a speedy trial, as guaranteed by the constitutions of both the United States and the State of Georgia. Finding that the trial court lacked evidence on which to base certain of its findings and that it misapplied the relevant law, we reverse the trial court's holding in this case.

A trial court's ruling as to whether a defendant's right to a speedy trial has been violated will not be reversed absent an abuse of discretion. *Hester v. State*.[4] The deference owed the trial court's ruling is diminished, however, where it contains factual findings that are either clearly erroneous or unsupported by the record, or where it misstates or misapplies the law. Id. See also *State v. Stallworth*[5] (a "trial court abuses its discretion when it rules without evidence to support the ruling or contrary to law or equity").

The undisputed facts of record show that in December 2003, the East Point Police Department began an investigation into the cause of suspicious injuries sustained by Hayes's then-four-year-old grandson. That investigation concluded with the March 5, 2004 indictment of Hayes and both of the child's biological parents on charges of aggravated battery and cruelty to children in the first degree. Hayes was arrested on March 13, 2004 and remained incarcerated while awaiting trial. On January 21, 2005, having conducted no further investigation and having kept Hayes incarcerated for ten months, the State dead-docketed[6] the indictment against Hayes and the child's mother, and Hayes was released from jail.

---

[1] OCGA § 16-5-21.

[2] OCGA § 16-5-24.

[3] OCGA § 16-5-70.

[4] *Hester v. State*, 268 Ga. App. 94, 96 (601 SE2d 456) (2004).

[5] *State v. Stallworth*, 293 Ga. App. 368 (2) (667 SE2d 147) (2008).

[6] "Dead-docketing has been characterized as a procedural device by which the prosecu-

On September 14, 2007, some 42 months after dead-docketing the original indictment, the State re-indicted Hayes and her two co-defendants, this time charging them with one count of aggravated assault, one count of aggravated battery, and two counts of cruelty to children in the first degree. The district attorney stated on the record that Hayes's initial plea and arraignment on these charges occurred in October 2007. On January 9, 2008, three months after Hayes's arraignment, her counsel filed a motion to dismiss the indictment based on the State's violation of Hayes's constitutional speedy trial rights, by delaying her prosecution for three and one-half years following her initial indictment. Eight months later, on September 2, 2008, the trial court held a hearing on the motion to dismiss, and it entered an order denying that motion on September 12, 2008. This appeal followed.

The template for deciding all constitutional speedy trial claims under the Sixth Amendment and the Georgia Constitution is laid out in the 1972 case of *Barker v. Wingo*[7] and the 1992 decision in *Doggett v. United States....*[8] The analysis has two stages. First, the court must determine whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered "presumptively prejudicial." If not, the speedy trial claim fails at the threshold. If, however, the delay has passed the point of presumptive prejudice, the court must proceed to the second step of the *Barker-Doggett* analysis, which requires the application of a delicate, context-sensitive, four-factor balancing test to determine whether the accused has been deprived of the right to a speedy trial.

*Ruffin v. State*.[9] We now turn to that analysis.

1. The constitutional right to a speedy trial attaches either at the time of the defendant's arrest or at the time of his indictment, whichever occurs earlier. *Boseman v. State*.[10] Here, the trial court correctly ruled that the delay in Hayes's prosecution created a presumption of prejudice to defendant, but erred in determining that the length of the delay ran from the time of Hayes's incarceration

---

tion is postponed indefinitely [by the State] but may be reinstated any time at the pleasure of the court." (Punctuation omitted.) *Beam v. State*, 265 Ga. 853, 855 (3), n. 3 (463 SE2d 347) (1995).

[7] *Barker v. Wingo*, 407 U. S. 514, 530 (IV) (92 SC 2182, 33 LE2d 101) (1972).

[8] *Doggett v. United States*, 505 U. S. 647, 651 (II) (112 SC 2686, 120 LE2d 520) (1992).

[9] *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008).

[10] *Boseman v. State*, 263 Ga. 730, 731 (1) (438 SE2d 626) (1994).

(March 13, 2004) until the filing of defendant's motion to dismiss indictment (January 8, 2008), a period of 46 months. The correct period for consideration was March 5, 2004 (the date of Hayes's original indictment) until September 12, 2008 (the date the court ruled on Hayes's motion), a period of approximately 54 months.[11] See *Ruffin*, supra, 284 Ga. at 55 (2) (a) (holding that the pre-trial delay included the time it took the trial court to decide the defendant's motion to dismiss the indictment for an alleged speedy trial violation). A delay of more than one year between the attachment of the right and the trial raises a threshold presumption of prejudice to the defendant. *Herndon v. State*.[12] Accordingly, "this case long ago crossed the presumptive prejudice threshold . . . [and] we must proceed to the second stage of the constitutional speedy trial analysis." *Ruffin*, supra, 284 Ga. at 55 (2) (a).

2. The four factors that form the core of the *Barker-Doggett* balancing test are: "(1) the length of the delay; (2) the reason for the delay and whether this is attributable to the defendant or the state; (3) the timeliness of the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. [Cit.]" (Punctuation omitted.) *State v. Johnson*.[13] No one of these factors, standing alone, "is either a necessary or sufficient condition to a finding of a deprivation of the right to a speedy trial." *Nelloms v. State*.[14] "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Harris v. State*.[15] "Thus, the second stage of the constitutional speedy trial analysis requires courts to engage in a difficult and sensitive balancing process and necessarily compels them to approach speedy trial cases on an ad hoc basis." (Punctuation omitted.) *Ruffin*, supra, 284 Ga. at 56 (2) (b).

(a) *Length of the delay*. Although the trial court properly found that the delay in this case was sufficient to trigger an analysis of Hayes's speedy trial claim, it thereafter erred by failing to accurately determine the 54-month length of the delay and by failing to weigh the length of that delay in conducting such an analysis.

---

[11] The State insists that the length of the pre-trial delay was only 22 months, arguing that we cannot count the 32 months between the dead-docketing of the first indictment as to Hayes and her re-indictment. In support of this assertion, the State cites to cases involving the *dismissal* of an indictment against a defendant who was then re-indicted at a later time. However, "[p]lacing a case upon the dead docket certainly constitutes neither a dismissal nor a termination of the prosecution in the accused's favor." (Punctuation omitted.) *Beam*, supra, 265 Ga. at 855 (3), n. 3. Consequently, "the fact that a case is placed on the dead docket does not affect the constitutional right to a speedy trial." *State v. Redding*, 274 Ga. 831, 833 (561 SE2d 79) (2002).

[12] *Herndon v. State*, 277 Ga. App. 374, 376 (1) (626 SE2d 579) (2006).

[13] *State v. Johnson*, 274 Ga. 511, 512 (555 SE2d 710) (2001).

[14] *Nelloms v. State*, 274 Ga. 179, 181 (549 SE2d 381) (2001).

[15] *Harris v. State*, 284 Ga. 455, 455 (667 SE2d 361) (2008).

> It is important that trial courts not limit their consideration of the lengthiness of the pretrial delay to the threshold question of presumptive prejudice and remember to count it again as one of four criteria to be weighed in the balancing process at the second stage of the *Barker-Doggett* analysis.

*Ruffin*, supra, 284 Ga. at 56-57 (2) (b) (i). This is because uncommonly long delays have "a tendency to compromise the reliability of trials in ways that neither party can prove or, for that matter, identify." (Punctuation omitted.) Id. at 56 (2) (b) (i). As a result, the weight accorded the other factors in the balancing test depends, to a large degree, on the length of the delay. See, e.g., *Doggett*, supra, 505 U. S. at 657 (III) (B) (even where the delay in prosecution results from governmental negligence, "our toleration of such negligence varies inversely with its protractedness"); *Hester*, supra, 268 Ga. App. at 98 (3) (defendant's five-year delay in asserting her right to a speedy trial could not be weighed heavily against her, given the State's failure to indict for three years following her arrest and subsequent delay in appointing her counsel); *Ruffin*, supra, 284 Ga. at 57 (2) (b) (i) (the longer the delay, the stronger the presumption that it has prejudiced the accused).

The record shows that law enforcement's investigation of the case against Hayes had concluded by the time of her first indictment, and that the State conducted no further investigation between Hayes's first and second indictments. Hayes was arrested and incarcerated for a period of ten months. The State then intentionally and deliberately elected to dead-docket Hayes's case, which it was free to reinstate at any time. They then released her from incarceration. As the trial court's order reflects, the State was unable to articulate any reason for the 54-month delay in bringing the case to trial, other than its own, intentional choices. "Accordingly, this factor weighs against the State on the *Barker-Doggett* scale. To the extent the trial court overlooked this factor in the four-factor balancing process, it erred." *Ruffin*, supra, 284 Ga. at 59 (2) (b) (i).

(b) *Reasons and responsibility for the delay.* The second factor in the *Barker-Doggett* analysis requires the court to examine both "the reason for the delay and whether this is attributable to the defendant or the state." (Punctuation omitted.) *Johnson*, supra, 274 Ga. at 512. Here, the trial court found, and the State concedes, that the responsibility for the delay in this case belonged to the government. Thus, analysis of this factor turns on the State's reasons for the delay and how heavily those reasons should weigh against the State.

"[T]he reason for the delay is pivotal in evaluating the strength of a constitutional speedy trial claim, as it can color the consideration of all other factors." *Ruffin*, supra, 284 Ga. at 59 (2) (b) (ii). The

342

Supreme Court has recognized that the reasons for State-induced delay fall along a spectrum. See *Doggett*, supra, 505 U. S. at 656-657 (III) (B). On one end of the spectrum is delay resulting from, or in spite of, the State's diligent prosecution of the case. Such delay could result from the complexity of the case, the need for additional investigation or discovery, or the government's inability to locate a key witness, despite good faith efforts to do so. See, e.g., *Hassel v. State*;[16] *Brannen v. State*.[17] This kind of delay will rarely, if ever, support a speedy trial claim. On the opposite end of the spectrum is

> [d]eliberate delay to gain an improper advantage over the accused . . . , [including d]elays designed to hamper a defendant's ability to mount a successful defense, to harass the defendant, or to coerce him or her into testifying against a co-defendant or otherwise turning state's evidence.

*West v. State*.[18] The heavy weight afforded this type of delay will virtually always result in a dismissal of the case against the defendant, because it "strikes at the very heart of the speedy trial guarantee." Id.

Experience has taught us, however, that the delay in the vast majority of cases results from some type of official neglect. Such cases fall in the middle of the spectrum, with the middle logically representing a sliding scale that encompasses everything between the two extremes. As the *Doggett* Court explained, "[b]etween diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable . . . [,]" regardless of the length of the delay or the reasons for the neglect. *Doggett*, supra, 505 U. S. at 656-657 (III) (B). Thus, even within the realm of governmental negligence, "different weights are to be assigned to different reasons for delay." (Punctuation omitted.) Id. at 657 (III) (B). See also *United States v. Hawk*;[19] *Layman v. State*[20] ("[t]o evaluate the reasons for delay, the court assigns various degrees of weight to the different reasons provided by the prosecution and the defense respectively").

Here, the trial court found that the delay in this case resulted

---

[16] *Hassel v. State*, 284 Ga. 861, 862 (b) (672 SE2d 627) (2009).

[17] *Brannen v. State*, 274 Ga. 454, 455 (553 SE2d 813) (2001).

[18] *West v. State*, 295 Ga. App. 15, 17 (B) (2), n. 4 (670 SE2d 833) (2008).

[19] *United States v. Hawk*, 474 U. S. 302, 315-316 (III) (B) (106 SC 648, 88 LE2d 640) (1986).

[20] *Layman v. State*, 284 Ga. 83, 85 (663 SE2d 169) (2008).

from the State's negligence. While the court held that it did not appear to be deliberately designed to prejudice Hayes's defense, there was nothing before it to support that conclusion. The only evidence showed that Hayes was indicted and incarcerated for ten months and then released from jail without her charges being dismissed, and that these actions resulted from the deliberate and intentional conduct of the State. No further investigation was performed or was necessary before Hayes's second indictment. The trial court, therefore, erred in finding that the reasons for the delay were "administrative" and "benign," and that the conduct was negligent rather than intentional and should weigh only slightly against the State. The State made an intentional decision to dead-docket, rather than dismiss, the case and therefore this factor should weigh heavily against the State.

The trial court's own order reveals that the court lacked evidence on which to base its conclusion that the delays resulted solely from administrative negligence, given the State's admission that the decisions were strategic and intentional. The alleged administrative reasons for the delay cited by the trial court included the fact that "*[s]ince the present indictment was filed*, there was a change in judges presiding over this division as well as prosecutors handling this case." (Emphasis supplied.) While these reasons might explain the trial court's eight-month delay in deciding Hayes's motion to dismiss the indictment, they do nothing to explain the three and one-half year delay in prosecution between March 2004 and September 2007. Additionally, this conclusion fails to acknowledge that the 32-month delay in prosecution between January 2005 and September 2007 resulted not from administrative error, but from the State's deliberate decision to place the case on the dead docket. Moreover, at the motion hearing the prosecutor indicated that the decision to dead docket the case was a strategic one, not a negligent one, resulting from the State's desire to try Hayes together with both of her co-defendants and its inability to locate one of those co-defendants. The trial court's order not only ignores the deliberate and strategic nature of the State's decision, it also fails to consider the fact that the State elected to dead-docket the first indictment *after* allowing Hayes to languish in jail for almost one year.

The trial court stated that it was taking "judicial notice of the clerk's file *in this case*, including calendars indicating that there have been previous activity and appearances in this case." (Emphasis supplied.) The trial court does not specify, however, whether it is referring to the clerk's file with respect to the current indictment (i.e., the current case), or whether it also considered the file relating to Hayes's first indictment, which had a different case number. More importantly, the trial court failed to specify what activity had

occurred (i.e., whether it was more than a calendar call), whether it related to one, two, or all three of the co-defendants in the case, or when that activity occurred (i.e., since the first or second indictments). And, given that the clerk's file was neither introduced into evidence at the hearing nor made a part of the record on appeal, no evidence sets forth the necessary information.

What is clear from the record, however, is that no activity could have occurred with respect to the prosecution of Hayes for at least 40 months of the 54-month pre-trial delay. This is because during the 32 months the original indictment against Hayes was dead-docketed, the prosecution of her, by definition, was not being pursued. *Beam v. State*, 265 Ga. 853, 855 (3), n. 3 (463 SE2d 347) (1995). Presumably, therefore, the case against Hayes would not have been placed on any court calendars, most particularly trial calendars. Nor would the case have been placed on a trial calendar during the eight months it took the trial court to hear and decide Hayes's speedy trial motion.

Even if the State's conduct had been negligent rather than intentional, the trial court erred in assuming that all government negligence in failing to prosecute must be viewed as benign, and therefore entitled to only de minimis weight against the government. Our cases reflect that negligence is entitled to minimal weight against the State only where it results either from the prosecution's inadvertent neglect of the case or from solely administrative factors over which the prosecution has no control, such as overcrowded court dockets or understaffed law enforcement agencies. See, e.g., *Johnson*, supra, 274 Ga. at 512-513 (2); *Hassel*, supra, 284 Ga. at 862 (b). We have further recognized, however, that delays resulting from deliberate decisions made by the State, strategic or otherwise, cannot be considered benign and must be weighted more heavily against the State. See *Jackson v. State*[21] (rejecting the State's argument that pre-trial delay resulting from the State's desire to try all co-defendants together was "benign," and therefore entitled to little weight, simply because it was not designed to prejudice the defense); *Ruffin*, supra, 284 Ga. at 61-62 (2) (b) (ii).

Here, the State has admitted that the majority of the four-and-a-half year delay in this case resulted from its deliberate decision to dead-docket the original indictment against Hayes. The evidence further indicates that this decision stemmed from the State's desire to try all three co-defendants together, combined with its inability to locate one of those co-defendants. Whatever the reasons underlying the State's strategic decision to delay the prosecution, however, the fact remains that the decision was deliberate and its conduct was

---

[21] *Jackson v. State*, 272 Ga. 782, 784 (534 SE2d 796) (2000).

intentional. "While there is no evidence that this was a deliberate attempt to 'hamper the defense,' neither is it negligence which is 'relatively benign.' It is therefore weighted against the state." (Footnote omitted.) *Jackson*, supra, 272 Ga. at 784.

Furthermore, the trial court's decision that this factor could not weigh heavily against the State failed to take into account the length of the delay at issue. Even benign negligence will begin to weigh more heavily against the State, the longer the delay caused by the same.

> [O]ur toleration of [governmental] negligence varies inversely with its protractedness, and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

(Citation omitted.) *Doggett*, supra, 505 U. S. at 657 (III) (B). See also *Barker*, supra, 407 U. S. at 538 (White, J., concurring) ("unreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn").

As the foregoing demonstrates, the 54-month delay in this case resulted from intentional governmental conduct, with the majority of that delay resulting from the State's knowing decision to deaddocket the original indictment against Hayes. Hence, while the delay may not have been a deliberate attempt to prejudice the defense, it was not "benign." This fact, combined with the substantial length of this delay, means that the second *Barker-Doggett* factor must be weighed substantially against the State.

(c) *Timeliness of Hayes' assertion of her right to a speedy trial.* The trial court erred in holding that this factor weighed against Hayes, because: (i) she did not file a statutory demand for a speedy trial; and (ii) she waited four months following her second indictment to assert her right to a speedy trial. The trial court misapplied the relevant law.

The law is well established that "the filing of a speedy trial demand is not a prerequisite for a plea in bar for failure to have a

speedy trial on constitutional grounds." *Hester*, supra, 268 Ga. App. at 99 (3). Moreover, an "accused is not required to demand a speedy trial at the first available opportunity, for the Supreme Court has expressly rejected the demand-waiver approach to the constitutional speedy trial right." *Ruffin*, supra, 284 Ga. at 62 (2) (b) (iii). Rather, "[t]he relevant question for purposes of the third *Barker-Doggett* factor is whether the accused has asserted the right to a speedy trial 'in due course.' " Id. at 63 (2) (b) (iii).

Notably, the trial court treated the delay in the speedy trial demand as being only four months[22] — i.e., from the time of the second indictment in September 2007 to the filing of the motion to dismiss the indictment in January 2008. Such a delay should not be weighed against a defendant — given the time chargeable to the State and the trial court's eight-month delay in having the hearing on the speedy trial motion. See *Ruffin*, supra, 284 Ga. at 63 (2) (b) (iii) (analyzing third *Barker-Doggett* factor, in part, by balancing time it took defendant to assert right to a speedy trial against time it took trial court to decide whether right had been violated).

Any delay by Hayes in asserting her right to a speedy trial under the facts of this case cannot be weighed against her. Here, the record shows that the State's investigation concluded in March 2004, shortly before Hayes's initial arrest and ten-month incarceration. The State made a deliberate decision to dead-docket rather than dismiss Hayes's indictment, for reasons of strategy, convenience, or both. Following her re-indictment, Hayes received appointed counsel, who filed the speedy trial motion within three to four months. Applying relevant precedent to these facts, we find that any delay by Hayes in asserting her right to a speedy trial cannot weigh against her. See *Hester*, supra, 268 Ga. App. at 99 (3) (defendant's delay in asserting her right to a speedy trial could not be weighed heavily against her where state had failed to prosecute the case for three years and defense "counsel filed a demand within months after being appointed"); *State v. Allgood*[23] (motion to dismiss a four-year-old indictment was timely where case had been removed from trial calendar for unknown reasons and the motion to dismiss was filed "promptly . . . once the case was placed back on the trial calendar

---

[22] In this regard, we note that the trial court correctly concluded that the time the case was dead-docketed should not be considered in determining whether Hayes timely asserted her right to a speedy trial. See *Redding*, supra, 274 Ga. at 833 (fact that State dead-docketed case for 46 months supported conclusion that defendant "did not earlier assert his right to a speedy trial because the State represented to him that the prosecution would not go forward"); *Harris*, supra, 284 Ga. at 456, n. 9 (indicating that time during which defendant's case was on dead-docket should not be counted against defendant when evaluating his assertion of right to speedy trial).

[23] *State v. Allgood*, 252 Ga. App. 638, 640 (3) (556 SE2d 857) (2001).

two and one-half years after the first call of the case"); *State v. White*[24] (motion to dismiss on speedy trial grounds filed nine months following defendants' arrest was timely, in light of government's delay seeking an indictment and its subsequent failure to arrest defendants until fifteen months following that indictment).

(d) *Prejudice.* The trial court found that this factor weighed against Hayes, because she did not present any evidence of actual prejudice to her defense resulting from the pre-trial delay. We note that "consideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, supra, 505 U. S. at 655 (III) (A). See also *Ruffin*, supra, 284 Ga. at 60 (2) (b) (ii) (pre-trial delay caused by governmental negligence is not "automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him"); *Stallworth*, supra, 293 Ga. App. at 370 (2) ("no one factor is regarded as either a necessary or sufficient condition to finding a violation of the right to speedy trial, but they are factors that must be considered in a test balancing the conduct of the State and the defense") (punctuation omitted). Rather, whether a defendant needs to show particularized prejudice depends upon an evaluation of the first three factors in the balancing test, and whether those factors weigh against the government. The central holding of *Doggett* was that when there is a significant delay (the first factor), caused by the government (the second factor), then the resulting "presumption of prejudice, albeit unspecified[, if] neither extenuated, as by the defendant's acquiescence [(the third factor)], nor persuasively rebutted [by the State]," entitles the defendant to relief. (Citation and footnote omitted.) *Doggett*, supra, 505 U. S. at 658 (III) (B). See also *United States v. Ingram*[25] (if each of the first three factors "weigh[s] heavily against the Government, the defendant need not show actual prejudice (the fourth factor) to succeed in showing a violation of his right to a speedy trial"); *United States v. Frye*[26] (in analyzing a speedy trial claim, a court "evaluates the first three factors . . . to determine whether prejudice will be presumed or whether actual prejudice must be shown"); *United States v. Bergfeld*[27] ("[d]epending on how heavily the first three factors weigh for or against the defendant, prejudice is presumed in some cases, relieving the defendant of any burden to show actual prejudice").

Under *Doggett*, a substantial delay gives rise to a presumption of

[24] *State v. White*, 282 Ga. 859, 862 (2) (c) (655 SE2d 575) (2008).
[25] *United States v. Ingram*, 446 F3d 1332, 1336 (IV) (11th Cir. 2006).
[26] *United States v. Frye*, 372 F3d 729, 736 (II) (B) (2) (5th Cir. 2004).
[27] *United States v. Bergfeld*, 280 F3d 486, 488 (III) (5th Cir. 2002).

actual prejudice, because "greater pretrial delays simultaneously increase the degree of prejudice presumed and decrease the expectation that the defendant can demonstrate tangible prejudice to his or her ability to present a defense." *Williams v. State*.[28] Where that delay results from government conduct, it will compel relief for the defendant unless the State can rebut that presumption. See, e.g., *White*, supra, 282 Ga. at 863 (2) (d) (pre-trial delay of five and one-half years gives rise to presumption of actual prejudice); *State v. Sutton*[29] (presumption of prejudice resulting from approximately seven-year delay); *Williams*, supra, 277 Ga. at 600-601 (1) (d) (an "extraordinarily long" delay of five years in bringing an indictment to trial raises presumption of actual prejudice); *State v. Redding*, 274 Ga. 831, 833 (561 SE2d 79) (2002) (delay of 67 months). Such a rebuttal can be achieved by showing either: (i) that the defendant acquiesced in the delay by failing to timely assert his right to a speedy trial; or (ii) otherwise benefitted from the delay. See *Harris*, supra, 284 Ga. at 456-457 (no presumption of actual prejudice despite pre-trial delay of sixty-five months, where defendant waited five years to assert the right, despite being represented by counsel during that time); *Kramer v. State*[30] (six-year pre-trial delay did not give rise to presumption of actual prejudice where "[t]he record strongly indicates that [the defendant] sought or knowingly acquiesced in the delay and that he did not want a speedy trial").

The fifty-four-month delay in this case falls six months shy of the five years we have previously held gives rise to a presumption of actual prejudice. See *Moore v. State*[31] (the "category of cases that presumes actual prejudice . . . generally includes only those cases where the delay is five years or longer"). Given that the *Barker-Doggett* analysis is a balancing test, however, requiring the trial court to analyze each case based upon its own unique facts, it necessarily forbids the application of any "bright-line" rules. Thus, the fact that the delay in this case was less than five years does not automatically foreclose a presumption of actual prejudice. Rather, in determining whether a pre-trial delay gives rise to a presumption of actual prejudice, the trial court must examine the delay relative to all other factors, including the complexity of the case and the evidence existing on the date the State initiated the prosecution. See *Barker*, supra, 407 U. S. at 531 (IV) ("the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex

---

[28] *Williams v. State*, 277 Ga. 598, 601 (1) (d) (592 SE2d 848) (2004).

[29] *State v. Sutton*, 273 Ga. App. 84, 87-88 (614 SE2d 206) (2005).

[30] *Kramer v. State*, 287 Ga. App. 796, 799 (1) (652 SE2d 843) (2007).

[31] *Moore v. State*, 294 Ga. App. 570, 574 (1) (d) (669 SE2d 498) (2008).

conspiracy charge"); *Ruffin*, supra, 284 Ga. at 65 (3). In short, the extent to which a defendant must prove prejudice from a delay in prosecution is directly related to the government's reasonableness in its pursuit of that defendant.

The *Ruffin* Court implicitly recognized that a pre-trial delay of 27 months, caused by government negligence, can give rise to a presumption of actual prejudice, so long as the defendant asserted his right to a speedy trial in due course. Specifically, the Court emphasized that "[c]entral to our decision to affirm the trial court's judgment [denying the defendant's motion to dismiss the indictment] is the fact that [the defendant] asserted the speedy trial right relatively late in the process." Supra, 284 Ga. at 66 (3). The Court went on to note:

> However, the clock is still ticking. It has now been well over three years since [the defendant] was indicted, and the vigor and formality with which he has pressed his constitutional speedy trial claim are no longer subject to challenge. The District Attorney should be aware that any further delay in bringing [the defendant] to trial not attributable to [the defendant] runs a serious risk of violating [the defendant's] right to a speedy trial guaranteed by the Sixth Amendment and the Georgia Constitution. If that were to happen, then under controlling United States Supreme Court precedent, dismissal of the charges . . . would be constitutionally required.

Id. See also *Ingram*, supra, 446 F3d at 1338 (IV) (holding that a two-year delay weighed heavily against the government when the arresting officer knew where the defendant lived and worked and made only weak efforts to contact the defendant).

The 54-month delay at issue here is substantial — indeed, it is longer than delays that the Supreme Court of Georgia has described as "egregious" and "deplorable." See *Nelloms*, supra, 274 Ga. at 180 (characterizing pre-trial delay of 51 months in a noncapital murder case as "egregious"); *Perry v. Mitchell*[32] (27-month delay in murder case "deplorable"). Moreover, the evidence shows that the delay did result from a deliberate, strategic decision by the State. It further appears that Hayes asserted her right to a speedy trial in due course. The first three *Barker-Doggett* factors, therefore, weigh against the State. And, given the length of the delay at issue, the relatively uncomplicated nature of this case, the fact that the government's

---

[32] *Perry v. Mitchell*, 253 Ga. 593, 594 (322 SE2d 273) (1984).

investigation was complete at the time of Hayes's original indictment, and the fact that the delay resulted from the State's deliberate conduct, we find that these factors weigh heavily against the State. See *Ruffin*, supra, 284 Ga. at 65 (3). Accordingly, these facts raised a presumption of actual prejudice to Hayes, that the State failed to rebut. *Doggett*, supra, 505 U. S. at 658 (III) (B).

As explained above, the trial court erred in several respects in its legal analysis of Hayes's constitutional speedy trial claim. Specifically, the trial court failed to weigh the length of the delay as part of its balancing analysis, and it further failed to adequately address the reasons for that delay. The trial court also abused its discretion in finding that Hayes's three- to four-month delay in asserting her right to a speedy trial should be weighed against her, because "[t]he case law simply will not support such a conclusion . . . [and j]udicial discretion, like equity, must follow the law." *Stallworth*, supra, 293 Ga. App. at 370. Finally, having failed to properly weigh the first three factors in the *Barker-Doggett* analysis, the trial court erred in finding that Hayes was required to present additional evidence of actual prejudice caused her by the State's conduct. We therefore reverse the trial court's order denying Hayes's motion to dismiss the indictment on speedy trial grounds.

*Judgment reversed. Adams and Doyle, JJ., concur.*

---

DECIDED JUNE 15, 2009 ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Kevin R. Brehm, Kenneth D. Kondritzer,* for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney,* for appellee.

