**FIRST DIVISION**
**BARNES, P. J.,**
**DILLARD, P. J., and PADGETT, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 14, 2024

# In the Court of Appeals of Georgia

A24A0411. FOREMAN v. THE STATE.
A24A0412. HALLETT v. THE STATE.

BARNES, Presiding Judge.

In these consolidated appeals, Jamal Ramon Foreman and Byron DeShawn Hallett (collectively, "Appellants") each appeal from a trial court order denying their respective motions for a plea in bar as to charges brought against them in 2017. Both Foreman and Hallet assert that the trial court erred in finding that the State had not violated their constitutional rights to a speedy trial. They further contend that the court erred in concluding their prosecutions were not barred by the applicable statutes of limitation. For reasons explained more fully below, we find that the trial court committed legal error in analyzing the Appellants' speedy trial claims. We further find that the trial court's order fails entirely to address the Appellants' statute of limitation

argument. Accordingly, we vacate the trial court's orders and remand these cases for further proceedings consistent with this opinion.

The appellate records show that both Foreman and Hallett were employed by the Georgia Department of Corrections as officers at Johnson State Prison. In late autumn of 2017, both men were arrested on charges related to the alleged abuse of inmates under their supervision. Approximately seven months later, on June 18, 2018, both Appellants, as well as nine of their coworkers, were indicted for the crimes that had led to their arrests.[1] The charges against Foreman included one count of violating his oath as a public officer, five counts of simple battery, and one count of making a false statement to a law enforcement officer. The charges against Hallett were substantially similar, and included one count of violation of his oath as a public officer, four counts of simple battery, and a single count each of influencing a witness and making a false statement to a law enforcement officer.

Shortly after the indictments issued, one of the Appellants' co-defendants, Wesley O'Neal,[2] filed a motion to quash the indictment against him, arguing that the

---

[1] It appears that the State indicted all defendants individually.

[2] O'Neal had been charged with a single count each of violating his oath of office, simple battery, and making a false statement to law enforcement. *O'Neal*, 352

State had failed to comply with OCGA § 17-7-52.[3] See *State v. O'Neal*, 352 Ga. App. 228 (834 SE2d 317) (2019). Shortly thereafter, Foreman filed a motion to quash that was virtually identical to that filed by Foreman.[4] On October 2, 2018, while Foreman's motion to dismiss was pending, the trial court granted O'Neal's motion and quashed all counts of the indictment against him. Id. at 230 . The State filed a notice of appeal as to that order on October 18.

One week after the State filed its appeal in O'Neal's case, the trial court held a calendar call as to the remaining 10 defendants. At that hearing, the trial court continued any proceedings in the remaining cases, including any hearings on the pending motions to quash, until after the appeal. The attorney who then represented

---

Ga. App. at 228-229.

[3] Under that statute, before an indictment "against a present or former peace officer charging the officer with the crime which is alleged to have occurred while he or she was in the performance of his or her duties is presented to a grand jury," the State is required to present the proposed indictment to the peace officer. OCGA § 17-7-52 (a). Additionally, the peace officer must be given an opportunity to testify before the grand jury, if he or she wishes to do so. OCGA § 17-7-52 (a) (3).

[4] Foreman also filed a special demurrer to the indictment, claiming that it failed to provide him with sufficient information as to the factual basis for the charged crimes. The appellate record does not show that the trial court ruled on Foreman's motion to quash or his special demurrer.

Hallett[5] had filed a request for continuance, and the court therefore noted that Hallett's case was "continued by the defense." There is no evidence, however, that Foreman ever requested a continuance, and it appears his case was continued by the court, without any input from Foreman. While the O'Neal appeal was pending, Hallet filed a motion to quash the indictment against him.

In October 2019, this Court issued an opinion affirming in part and reversing in part the trial court's order quashing the O'Neal indictment. *O'Neal*, 352 Ga. App. at 228. We concluded that the trial court did not err in quashing the indictment as to the charge that O'Neal violated his oath of office because O'Neal had not been provided with notice and an opportunity to be heard, as required by OCGA § 17-7-52. Id. at 231. We further concluded, however, that the remaining charges against O'Neal (battery and making a false statement), did not implicate OCGA § 17-7-52 because the indictment did not allege that O'Neal was in the performance of his duties as a corrections officer when he committed those offenses. Id. at 231-232. The Supreme Court of Georgia subsequently denied the State's petition for writ of certiorari, *State*

---

[5] In the initial stages of the prosecution, Foreman and Hallett were represented by separate attorneys. With respect to the motions at issue, both Appellants are represented by the same attorney.

*v. O'Neal*, Case No. SC20C0418 (April 20, 2020), and the remittitur was issued in July 2020. At that time, the State's courts were operating under a judicial emergency order issued in the wake of the COVID-19 pandemic.[6]

The record indicates that no action was taken in the case for almost a year following remittitur. On June 24, 2021, shortly before the expiration of the pandemic emergency order, Foreman filed a statutory speedy trial demand. The State, however, made no effort to proceed with the prosecution. In February 2022, both Freeman and Hallett filed a general demurrer to the indictments against them and moved to adopt the briefs and other pleadings filed on this issue by another co-defendant. A month later, in March 2022, the trial court held a hearing in the case and orally granted the Appellants' motion to adopt their co-defendant's pleadings as to the general

---

[6] "On March 14, 2020, . . . citing the public health emergency presented by the COVID-19 pandemic, Supreme Court of Georgia Chief Justice Harold Melton issued an order declaring a statewide judicial emergency." *Copeland v. Copeland*, 361 Ga. App. 125, 127, n. 3 (863 SE2d 509) (2021). "The judicial emergency order, among other things, suspended jury trials that had not yet commenced" and "thereafter was extended several times with modifications." *Labbee v. State*, 362 Ga. App. 558, 560 (869 SE2d 520) (2022) The order expired on June 30, 2021. See https://www.gasupreme.us/wp-content/uploads/2021/06/15th-SJEO_as-issued.pdf (June 7, 2021).

demurrer.[7] At that hearing, counsel for the Appellants' asked when the State anticipated going to trial. The State responded that it planned to seek new indictments, which it anticipated would be coming forth in April 2022, meaning the Appellants could be arraigned in May.

In July 2022, after four more months passed without the State taking any further action in the case, the Appellants filed the pleas in bar currently at issue. In support of their respective motions, both Appellants argued that the delay caused by the State's failure to act in the case constituted a violation of their constitutional right to a speedy trial and that their prosecution was barred by the State's failure to obtain a valid indictment within the statute of limitations. The trial court held a calendar call on October 19, 2022, at which it orally granted the motion to dismiss the counts in each indictment charging a violation of the oath of a public officer on the grounds that the State had failed to properly indict that count within the applicable statute of limitations. The court also orally denied the motion to dismiss all remaining counts of the indictment, finding that no constitutional speedy trial violation had occurred,

---

[7] Although the trial court orally granted the motion, no written order appears in the record. Additionally, the record contains no written order reflecting that the trial court ruled on the general demurrers filed by Appellants.

and stating, "I'm satisfied and I do find that all of the parties involved agreed to wait for . . . a determination by the Court of Appeals in Mr. [O'Neal's] case . . . ."

Three months later, on January 10, 2023, the trial court entered written orders denying each Appellant's plea in bar. Although entered separately, the orders were substantively identical and found that no constitutional speedy trial violation had occurred. Notably, neither order addressed the argument that the prosecution was barred by the applicable statutes of limitation. Nor did the orders reflect the trial court's oral ruling dismissing those counts of the indictments alleging violation of an oath of a public officer.

Following entry of the orders, the Appellants obtained certificates of immediate review, and each filed an application for interlocutory appeal. This Court granted both applications, and these appeals followed.

1. Appellants assert that the trial court erred in finding that the State had not violated their constitutional right to a speedy trial. In analyzing a defendant's claim that he has been denied a speedy trial, a trial court must apply the two-part test set forth in *Barker v. Wingo*, 407 U. S. 514, 530-533 (IV) (92 SCt 2182, 33 LEd2d 101) (1972) and *Doggett v. United States*, 505 U. S. 647, 651-658 (II)-(III) (112 SCt 2686, 120

LEd2d 520) (1992). Under that test, the trial court must first determine "whether the length of time between the defendant's arrest and trial is sufficiently long to be considered 'presumptively prejudicial.'" (Citation and punctuation omitted.) *Redding v. State*, 313 Ga. 730, 732 (2) (873 SE2d 158) (2022). If the delay is insufficient to give rise to presumptive prejudice, "the speedy-trial claim fails at the threshold." (Citation and punctuation omitted.) Id.

The existence of presumptive prejudice, however, requires the trial court to proceed to the second part of the speedy-trial framework. At this stage, the court applies "a context-focused, four-factor balancing test to determine whether the defendant was denied the right to a speedy trial." (Citation and punctuation omitted.) *Redding*, 313 Ga. at 732 (2). See also *Jenkins v. State*, 294 Ga. 506, 513 (2) (c) (755 SE2d 138) (2014) ("This test compels the examining court to consider and weigh all four factors in the context of the particular circumstances of the case at issue.") "This second part of the speedy-trial analysis requires courts to engage in a difficult and sensitive balancing process and necessarily compels them to approach speedy-trial cases on an ad hoc basis." *Redding*, 313 Ga. at 732 (2) (Citation and punctuation omitted.) In applying this test, courts must be aware that "no single factor is necessary

or sufficient to sustain a speedy trial claim[.]" (Citation and punctuation omitted.) *State v. Adams*, 364 Ga. App. 864, 865 (876 SE2d 719) (2022). Put another way, none of the four factors have any "talismanic qualities and [they] must be considered together with such other circumstances as may be relevant in light of the animating principles of the speedy trial guarantee." (Citation and punctuation omitted.) *Durham v. State*, 355 Ga. App. 426, 428 (1) (844 SE2d 499) (2020).

a. *Presumptive prejudice*.

"The right to a speedy trial attaches at the time of arrest or formal accusation or indictment, whichever occurs first, and the courts measure the delay from the time the right attaches." *Williams v. State*, 362 Ga. App. 383, 385 (a) (867 SE2d 819) (2022). "That time then runs until the date on which the defendant's trial begins." *Henderson v. State*, 310 Ga. 231, 235 (2) (a) (850 SE2d 152) (2020). Where no trial has occurred, however, "the length of delay should be calculated from the date of arrest or formal accusation to the date on which the motion to dismiss on speedy trial grounds was decided." *Phan v. State*, 290 Ga. 588, 593 (1) (a) (723 SE2d 876) (2012). As a general rule, a delay of one year or more is "presumed to be prejudicial" to the defendant. *Goins v. State*, 306 Ga. 55, 57 (2) (a) (829 SE2d 89) (2019).

Here, the appellate records show that Foreman was arrested on October 19, 2017, and that Hallet was arrested approximately three weeks later, on November 8, 2017. Given that more than five years elapsed between the Appellants' arrests and the entry of the orders denying their motions for discharge and acquittal, the trial court concluded correctly that the delay in each case gave rise to presumptive prejudice.

b. *The Barker-Doggett factors.*

We next examine whether the trial court erred in applying the four-factor balancing test. In conducting this review, we are mindful that weighing the relevant factors in the context of a specific case is a task committed principally to the discretion of the trial court. *State v. Porter*, 288 Ga. 524, 526 (2) (a) (705 SE2d 636) (2011). Accordingly, we accept the factual findings of the trial court unless they are clearly erroneous, and we accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion, even though we might have reached a different conclusion were the issue committed to our discretion. Id. at 533 (2) (e). The trial court abuses its discretion where it misstates or misapplies the law, fails to specify the weight given to one or more of the relevant factors, or misstates or fails to take into account relevant facts of record. See *Redding*, 313 Ga. at 736 (2); *Adams*, 364 Ga. App. at 869 (2) (b) (ii).

And because "it is not the job of an appellate court to weigh the *Barker* factors in the first instance" where an abuse of its discretion has occurred, "we generally remand the case for the trial court to exercise its discretion again." (Citation and punctuation omitted.) *Dillard v. State*, 297 Ga. 756, 762 (4) (778 SE2d 184) (2015). See also *Adams*, 364 Ga. App. at 869 (2) (b) (ii).

(i) *Length of the delay*.

While "the length of the pretrial delay in absolute terms plays a role in the threshold determination of presumptive prejudice . . . it also wears another hat as one of the four interrelated criteria that must be weighed in the balance at the second stage of the *Barker-Doggett* analysis." (Citation and punctuation omitted.) *Dillard*, 297 Ga. at 760 (4). At this stage, the length of the delay is examined in the context of the case under consideration. Specifically, courts examine factors such as whether the case is especially complex and whether the State's investigation was complete at the time the indictment issued. See *State v. Buckner*, 292 Ga. 390, 393 (3) (a) (738 SE2d 65) (2013) (in assessing the length of the delay, a trial court should consider whether the State "had completed its investigation of the case by the time [the defendant] was indicted."); *Durham v. State*, 355 Ga. App. 426, 429 (1) (a) (844 SE2d 499) (2020)

("[T]he length of delay that can be tolerated in a particular case depends to some extent on the complexity and seriousness of the charges in that case.") (citation and punctuation omitted); *Jung v. State*, 353 Ga. App. 327, 330 (a) (836 SE2d 640) (2019) ("The delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.") (citation and punctuation omitted).

Here, the trial court found that the more than five-year delay weighed against the State, but it declined to specify what weight it was assigning this factor. In other words, the orders do not specify whether the court weighed the delay heavily, moderately, or lightly against the State. Accordingly, remand is required so that the trial court can identify the weight assigned this factor, as well as the reasons underlying this weight. See *Adams*, 364 Ga. App. at 869 (2) (b) (ii).

(ii) *Reason for the delay*.

The reason or reasons underlying the delay in bringing a defendant to trial "is pivotal in evaluating the strength of a constitutional speedy trial claim, as it can color the consideration of all of the factors." (Citation punctuation omitted.) *Hayes v. State*, 298 Ga. App. 338, 341 (2) (b) (680 SE2d 182) (2009). Delays caused by the prosecution weigh against the State, while delays caused by the defense weigh against

the accused. *Henderson*, 310 Ga. at 236 (2) (b). The specific weight accorded this factor "is determined by the reason given by the party for the delay and exists on a spectrum between deliberate delay to negligence, with deliberate delay weighed most heavily against the responsible party." (Citation and punctuation omitted.) *Stewart v. State*, 310 Ga. App. 551, 554 (2) (b) (713 SE2d 708) (2011). In other words, any delay caused by deliberate conduct, rather than inadvertent neglect of the case, must be given more than minimal weight. See *Hayes*, 298 Ga. App. at 344 (2) (b) ("delays resulting from deliberate decisions made by the State, strategic or otherwise, cannot be considered benign and must be weighted more heavily against the State.") "Even benign negligence[, however,] will begin to weigh more heavily against the State, the longer the delay caused by the same." Id. at 345 (2) (b). As the *Doggett* Court explained, "such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness and its consequent threat to the fairness of the accused's trial." (Citations omitted.) *Doggett*, 505 U.S. at 657 (III) (B).

Here, the trial court found that the delay in each Appellant's case resulted from five factors. First, the court noted the 18-month delay caused by the *O'Neal* appeal, including the time it took for remittitur to the trial court. And the court concluded that this delay "should not be assessed against the State." Second, the court cited its own 13-month delay in entering a new order in O'Neal's case following remittitur, and found that this delay could not be weighed against either party. In reaching both of these conclusions, the trial court failed to recognize that for purposes of analyzing the reasons for the delay, "the relevant inquiry . . . is not whether the prosecutor or the accused bears more responsibility for the delay, but whether the *government* or the criminal defendant is more to blame for that delay." (Citation and punctuation omitted; emphasis supplied.) *Miller v. State*, 313 Ga. App. 552, 554 (2) (b) (722 SE2d 152) (2012). And "the government includes all state actors, even trial and appellate court judges." (Citation and punctuation omitted.) *Richardson v. State*, 318 Ga. App. 155, 160 (2) (b) (733 SE2d 444) (2012). Thus, the trial court erred in finding that neither the delay caused by the *O'Neal* appeal nor the trial court's delay in entering a new order in that case following remittitur could be weighed against the State.

14

The trial court also found that the 16-month delay caused by the judicial emergency resulting from the COVID-19 pandemic could not be weighed against either party. The trial court was correct that a delay caused by the COVID-related judicial emergency may not be weighted against either party. See *Adams*, 364 Ga. App. at 868 (2) (b) (i). It is unclear, however, that any delay in these cases can be attributed to the judicial emergency. At both the October 2018 calendar call and in its written orders, the trial court made clear that it had decided not to take any action in the remaining cases until an appellate decision in *O'Neal*. The trial court's orders further indicate that it had decided not to take any action in the pending cases until it entered a new order in O'Neal's case. Notably, the judicial emergency order went into effect after O'Neal filed his appeal and four months before the trial court received the remittitur in that case. Moreover, the trial court did not enter a new order in O'Neal's case until August 2021, approximately two months after the emergency order expired. Thus, there is a possibility that none of the delays resulted from the judicial emergency. On remand, the trial court should make factual findings as to this issue.

Additionally, the court found that there was a delay of over a year resulting from the prosecution's announcements in September 2021 and March 2022 that it intended

15

to seek new indictments against each of the Appellants. While the court acknowledged that this delay weighed against the State, it weighed that factor lightly, noting that "there was a significant legal issue raised regarding the running of the statute of limitations which kept the State from reindicting."[8] In finding that this factor only weighed slightly against the State, the trial court failed to consider whether the prosecution's conduct with respect to seeking new indictments resulted from a deliberate decision, rather than mere negligence. See *Buckner*, 292 Ga. at 395 (3) (b) (affirming a trial court finding that a 10-month delay "occasioned by the announcement of an intent to seek the death penalty was the result of a deliberate decision by the State and something more than mere negligence.) (punctuation omitted). Put simply, it seems that even during the pendency of the *O'Neal* appeal, the prosecution was free to seek new indictments that complied with the requirements of OCGA § 17-7-52. See *Kenerly v. State*, 325 Ga. App. 412, 414-415 (1) (750 SE2d 822) (2013) (physical precedent only). And seeking new indictments at that time may have avoided any statute of limitations issues. The prosecution, however, took no

---

[8] The order does not indicate what those "significant issues" were, or why they prevented the district attorney from seeking new indictments. Unfortunately, the State declined to file a brief in these appeals, meaning it has failed to provide us with any additional insight on this or several other issues.

further action in any of the remaining cases while O'Neal's appeal was pending. On remand, therefore, the trial court should make findings as to any facts that resulted in the State's failure to obtain new indictments earlier.

Finally, the trial court found that part of the delay resulted from failure of both the State and the Appellants to file any pleadings during the 22 months between August 2018 and June 2021. The court also weighed the parties' inaction slightly against the State. We find that the trial court erred to the extent it considered either Appellants's "lack of action" in the case from the October 2018 until June 2021, for two reasons.

First, the trial court continued the case in October 2018, and by the time remittitur was received, the judicial emergency order was in effect. Moreover, during this time frame, both Appellants had a motion to quash pending. More importantly, the trial court's consideration of the Appellants' conduct in this regard ignores the fact that "[a] defendant has no duty to bring himself to trial; the State has that duty as well as the duty of ensuring that the trial is consistent with due process." (Citation and punctuation omitted.) *Jackson v. State*, 272 Ga. 782, 783 (534 SE2d 796) (2000). See also *Miller*, 313 Ga. App. at 554 (2) (b) ("The government is responsible for

bringing a defendant promptly to trial[.]"). Indeed, the only affirmative action required of a defendant is that he assert his right to a speedy trial, which is evaluated as a separate factor.

In light of the gaps in the trial court's legal analysis, as well as the absence of some factual findings, the trial court on remand should reassess the reasons for the delay and reweigh this factor. See *Richardson*, 318 Ga. App. at 161 (2) (b).

(iii) *The Appellants' assertion of their right to a speedy trial.*

"Once the right to a speedy trial attaches, the accused must assert it with reasonable promptness, and delay in doing so normally will be weighed against him." (Citation and punctuation omitted.) *Adams*, 364 Ga. App. at 870 (2) (c). However, "the filing of a speedy trial demand is not a prerequisite for a plea in bar for failure to have a speedy trial on constitutional grounds." (Citation and punctuation omitted.) *Hayes*, 298 Ga. App. at 345-346 (2) (c). Nor is an accused required to demand a speedy trial "at the first available opportunity." (Citation and punctuation omitted.) *Buckner*, 292 Ga. at 396 (3) (c). Instead, "[t]he relevant question for purposes of the third *Barker-Doggett* factor is whether the accused has asserted the right to a speedy

trial 'in due course.'" (Citation omiitted.) *Ruffin v. State*, 284 Ga. 52, 63 (2) (b) (iii) (663 SE2d 189) (2008).

With respect to Foreman, the court found that he waited until June 24, 2021 to to file his statutory speedy trial demand, and that this demand failed to comply with the relevant statutory requirements.[9] Foreman then waited until July 2022, when he filed his plea in bar, to assert his speedy trial right a second time. With respect to Hallett, the court found that although he had filed a statutory speedy trial demand shortly after his indictment, he withdrew the same in September 2018. Hallett then failed to assert a speedy trial demand until July 2022, when he filed his plea in bar.

Relying on these findings, the trial court concluded that because neither Appellant properly invoked his right to a speedy trial until over four years following his indictment, this factor should be weighed against both. The court failed to specify, however, whether it weighed this factor heavily, moderately, or lightly against each Appellant. Moreover, in reaching the conclusion that this factor weighed against the Appellants, the trial court relied solely on the amount of time that had elapsed since indictment, without considering the procedural history of the case — a history that

---

[9] The trial court found that the statutory demand was untimely and was not served upon any judge within the judicial circuit.

the trial court relied on in declining to weigh certain factors against the State. And as noted above, the relevant question is whether, given the circumstances of these particular cases, the Appellants asserted their speedy trial right "in due course." Thus, the trial court should have considered whether a speedy trial demand would have had any effect if filed earlier, in light of the *O'Neal* appeal, the trial court's delay in entering an order following remittitur, the emergency judicial order, and the prosecution's repeated announcements that it intended to reindict that case.[10] On remand, therefore, the trial court should assess whether, in light of all the relevant facts, Appellants asserted their constitutional right to a speedy trial in due course. And if the court concludes that Appellants failed to assert their right timely, it should also consider the relevant facts to determine what weight to afford this factor.

(iv) *Prejudice to Appellants.*

The fourth factor of the *Barker-Doggett* analysis requires that the trial court assess the prejudice to the accused resulting from the delay in bringing him to trial.

> [P]rejudice should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect, namely to prevent

---

[10] There is no indication in the record that the State sought new indictments against either Appellant.

oppressive pretrial incarceration, to minimize anxiety and concern of the accused, and to limit the possibility that the defense will be impaired. Of these interests, an injury to the last is the most serious, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

(Citations and punctuation omitted.) *Buckner*, 292 Ga. at 398 (3) (d).

Here, the trial court found that the delay had prejudiced Appellants because the victims were incarcerated at the time of the alleged crimes. The court therefore noted that Appellants "will face difficulties contacting the alleged victims and/or witnesses." Additionally, the court acknowledged that the passage of time may have impaired the memories of some witnesses. Despite these findings, however, the court concluded that this prejudice should be weighed only lightly against the State, because the same issues would prejudice the prosecution's ability to present its case.

The trial court erred in taking into account potential prejudice to the State. Put simply, prejudice to the State is not a factor to be considered in analyzing whether a defendant's right to a speedy trial has been violated. Accordingly, on remand, the trial court should reassess the weight to be afforded this factor.

2. Appellants also contend that the trial court erred in denying their pleas in bar because their prosecutions are barred by the applicable statutes of limitation. The trial court's orders, however, failed to address this argument. Moreover, although the trial court orally granted Appellants' motions to dismiss the counts charging them with violating their oaths as public officers, the court's written orders do not reflect that ruling. On remand, therefore, the trial court should address Appellants' claims related to the statutes of limitation.

Given the errors and gaps in the trial court's analysis, and because "we cannot substitute our judgment for that of the trial court," we vacate the trial court's orders and remand these cases "for the trial court to exercise its discretion again using properly supported factual findings and the correct legal analysis, reflected in an adequate written order." (Citations and punctuation omitted.) *Richardson*, 318 Ga. App. at 164 (2) (e). We remind the State, however, "that the speedy trial clock is still ticking, and the trial court's analysis on remand should take into account that the length of the pretrial delay continues to run until entry of a [second] written order applying the *Barker-Doggett* framework." (Citation and punctuation omitted.) Id.

*Judgments vacated and cases remanded. Dillard, P. J., and Padgett, J., concur.*