A10A0659. THE STATE v. IVORY.

(698 SE2d 340)

</div>

ADAMS, Judge.

Michael Ivory was arrested on December 24, 2005, and a fourteen-count indictment charging him with one count of armed robbery, one count of aggravated assault with intent to rob, five counts of criminal attempt to commit armed robbery, five counts of aggravated assault and two firearm possession offenses was returned against him on January 13, 2006. Ivory was released on bond on or about January 21. Retained counsel filed an entry of appearance on March 23, 2006; Ivory was also arraigned that day.

Between November 2006 and October 2008, Ivory's case appeared on several trial calendars, but was never reached for trial. Ivory filed a motion for discharge and acquittal on November 14, 2008, asserting that his constitutional right to a speedy trial had been violated. Following a hearing on August 20, 2009, the trial court orally granted Ivory's motion. The trial court entered an order dismissing the indictment on September 3, 2009, and the State timely filed this appeal.

The record and hearing transcript show that on December 24, 2005, two men attempted an armed robbery at Louise's Place Club. During the attempt, one of the victims shot one of the perpetrators with a gun loaded with bird shot, hitting him in the head and upper chest region. Several hours later, Ivory was transported to Grady Hospital with a gunshot wound to his face and chest. He was treated for his injuries and interviewed by police at the hospital. Although he initially told police he was shot at another location, Ivory subsequently gave a statement to police indicating he was shot in the parking lot of the club.

Also pertinent here, the record additionally shows that on March 23, 2006, the trial court entered a case management order requiring

the State to provide full and complete discovery within 30 days in the event Ivory elected to "opt-in" to reciprocal discovery pursuant to OCGA § 17-16-1. On April 31, 2006, Ivory gave notice of his election to opt-in and requested, among other items, "[a]ny and all results and reports of physical examinations." The State provided several of the requested items on April 26, 2006, but no medical reports. Ivory filed a motion to compel discovery on December 5, 2007 requesting, inter alia, all police reports, all reports generated by the GBI Crime Lab or any ID Technicians who may have processed the crime scene, including the reports of ID Tech Unit 7325,[1] and all medical records pertaining to Ivory's detention at Grady Hospital and the treatment of his gunshot wounds. The State provided some additional items on October 2008, including the hospital admissions sheet and photographs of the crime scene, but no hospital treatment records or ID Tech reports were included, and no explanation was made for the failure to provide these items. Ivory filed an amended motion to compel on April 1, 2009, again requesting all medical records pertaining to his treatment at Grady, color copies of the crime scene photographs, "all forensic evidence gathering and testing, including the reports of ID Tech 7325," as well as several additional items, including the recordings from certain 911 calls. The trial court entered an order granting the motion on April 2, and gave the State until May 7 to respond to the motion. The State filed its response to the motion on that date and indicated that it was not aware of any reports generated by any ID or Lab Techs, that it had served a search warrant on Grady Hospital seeking Ivory's medical records in January 2007, and the hospital had indicated that it could not locate the medical records, that it had requested the recording from the 911 call made from the scene but the police department had failed to produce the recording and that it was in the process of searching for any other related 911 calls.

Against this backdrop, we turn to the trial court's order granting the motion to dismiss the indictment, which we review under an abuse of discretion standard. E.g., *State v. Redding*, 274 Ga. 831, 832 (561 SE2d 79) (2002). And we defer to the trial court's findings of fact and its weighing of disputed facts. *State v. White*, 282 Ga. 859, 861 (2) (655 SE2d 575) (2008). Further,

> [t]he template for deciding all constitutional speedy trial claims under the Sixth Amendment and the Georgia Con-

---

[1] In the police report the State previously provided to Ivory, it was noted that "ID Tech 7325 responded [to the scene] to take photographs, and to collect . . . shell casings. . . ." Thus, Ivory specifically requested any photographs of the scene and results of forensic testing, including the reports of ID Tech Unit 7325.

stitution is laid out in the 1972 case of *Barker v. Wingo*[, 407 U. S. 514, 530 (IV) (92 SC 2182, 33 LE2d 101) (1972)] and the 1992 decision in *Doggett v. United States*, [506 U. S. 647, 651 (II) (112 SC 2686, 120 LE2d 520) (1992)]. . . . The analysis has two stages. First the court must determine whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered "presumptively prejudicial." If not, the speedy trial claim fails at the threshold. If, however, the delay has passed the point of presumptive prejudice, the court must proceed to the second step of the *Barker-Doggett* analysis, which requires the application of a delicate, context-sensitive, four-factor balancing test to determine whether the accused has been deprived of the right to a speedy trial.

*Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008).

1. *Presumptive Prejudice*. Here, the time between the earlier of the date of the original arrest or the date of the original indictment and the September 2009 order granting Ivory's motion to dismiss was approximately three years and nine months. This delay was presumptively prejudicial, as conceded by the State, thus triggering the analysis under the *Barker-Doggett* balancing test. E.g., *White*, 282 Ga. at 862 (2) (a) (delay approaching one year is generally presumptively prejudicial); *State v. Giddens*, 280 Ga. App. 586, 587 (634 SE2d 526) (2006) (delay of more than eight months usually considered presumptively prejudicial).

2. *Barker-Doggett Balancing Test*. The four factors that must be considered during the second stage of a constitutional speedy trial analysis are: (i) whether the delay before trial was uncommonly long, (ii) whether the government or the accused is more to blame for that delay, (iii) whether, in due course, the accused asserted the right to a speedy trial, and (iv) whether the accused suffered prejudice as the delay's result. *Ruffin*, 284 Ga. at 56 (2) (b); *State v. Johnson*, 274 Ga. 511, 512 (555 SE2d 710) (2001); *Hayes v. State*, 298 Ga. App. 338, 340 (2) (680 SE2d 182) (2009).

No one of these factors, standing alone, is either a necessary or sufficient condition to a finding of a deprivation of the right to a speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. Thus, the second stage of the constitutional speedy trial analysis requires courts to engage in a

difficult and sensitive balancing process and necessarily compels them to approach speedy trial cases on an ad hoc basis.

(Citations and punctuation omitted.) *Hayes*, 298 Ga. App. at 340 (2).

(a) *Length of the Delay*. The delay in this case is presumptively prejudicial and, as the trial court found, is considered an uncommonly long delay. "Excessive delay has a tendency to compromise the reliability of trials in ways that neither party can prove or, for that matter, identify." (Punctuation omitted.) *Ruffin*, 284 Ga. at 56 (2) (b) (i). The trial court properly weighed this factor against the State. Id.; *Robinson v. State*, 298 Ga. App. 164, 167 (1) (b) (i) (679 SE2d 383) (2009).

(b) *Whether the Government or the Accused is More to Blame for the Delay*. "The second factor in the *Barker-Doggett* analysis requires the court to examine both the reason for the delay and whether this is attributable to the defendant or to the State. *Johnson*, 274 Ga. at 512." *State v. Moses*, 301 Ga. App. 315, 318 (2) (b) (692 SE2d 1) (2009). In this case, the trial court determined that Ivory was not the cause of the delay, and weighed this factor against the State. The State argues that the delay in this case was due to an overcrowded docket, and thus this factor should be afforded a "relatively benign" negative weight. *Jackson v. State*, 272 Ga. 782, 784 (534 SE2d 796) (2000). Although the trial court weighed this factor against the State, the court did not indicate and it does not appear that it weighed this factor heavily against the State; thus we find no abuse of discretion in the trial court's consideration of this factor.

(c) *Timeliness of the Assertion of the Right to a Speedy Trial*. " 'Because a defendant may benefit by delaying a trial, this Court has recognized that a defendant has a responsibility to assert his right to a speedy trial.' . . . *Hester [v. State]*, 268 Ga. App. [94, 98 (3) (601 SE2d 456) (2004)]." *Moses*, 301 Ga. App. at 319 (2) (c). That does not mean, however, that an accused is required to demand a speedy trial at the first available opportunity, and the Supreme Court has expressly rejected the demand-waiver approach to the constitutional speedy trial right. *Ruffin*, 284 Ga. at 62; *Hayes*, 298 Ga. App. at 345-346 (2) (c). The relevant inquiry is thus whether the right has been asserted in "due course." *Ruffin*, 284 Ga. at 62-63 (2) (b) (iii).

The trial court found that although Ivory's failure to assert his right to a speedy trial normally would be weighed heavily against him, that weight was mitigated here because Ivory was still attempting to receive discovery from the State and was still attempting to

collect evidence from Grady Hospital and the Atlanta Police Department. Specifically, the trial court found

> [w]ith nothing in the record to indicate that the State provided notice to Mr. Ivory that the medial records were not available as of January, 2007, and no response to Mr. Ivory's motion to compel until May 7, 2009, Mr. Ivory cannot be faulted for demanding that the State comply with discovery obligations before trial began.

In light of these mitigating circumstances, the trial court did not abuse its discretion by finding that this factor should not be weighed heavily against Ivory. E.g., *Moses*, 301 Ga. App. at 320 (2) (c).
   (d) *Prejudice to the Defendant*.

> [T]he issue of prejudice weighs "most heavily in determining whether a defendant's constitutional rights have been violated." *Simmons v. State*, 290 Ga. App. 315, 316 (4) (659 SE2d 721) (2008). In evaluating prejudice, a court must consider the three interests protected by the speedy trial right: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the defendant, and (iii) limiting the possibility that the defense will be impaired. . . . The third interest — impairment of the defense — is the most important component of the prejudice factor. Id. See also *Frazier v. State*, 277 Ga. App. 881, 883 (d) (627 SE2d 894) (2006).

*Moses*, 301 Ga. App. 321 (2) (d).
   The trial court found that there was no oppressive pretrial incarceration[2] and that there had been no evidence to show that Ivory suffered anxiety or concern about the trial of the case being delayed.
   However, the trial court did find that Ivory's ability to prepare his defense and receive a fair trial had been impaired by the delay in this case. This finding was based on the fact that the missing Grady records were critical to Ivory's defense since he claimed that they would demonstrate he was heavily intoxicated and under the influence of medication at the time he made his statement to police,[3] and

---

[2] Ivory was only incarcerated for about a month.

[3] At the hearing on the motion to dismiss, defense counsel indicated that there were witnesses who would testify that Ivory was under the influence of alcohol and medication to the extent that he could not stand under his own power at the time he received treatment for his injuries and made a statement to police.

because the records were needed to show whether the type of wounds he received were consistent or inconsistent with the type of ammunition which was fired from the patron's gun at the club. The trial court also found that the missing 911 call records were important to corroborate certain aspects of the defense, and that evidence remained unaccounted for, such as some of the photographs of the scene and forensic evidence concerning shell casings found at the scene. Based on the foregoing, the trial court weighed this factor heavily against the State.

The State argues the trial court erred in weighing this factor against it, because of ample precedent in which we have failed to find prejudice when an accused did not act promptly to obtain evidence on his own behalf, such as directly requesting medical records which were later lost, even though those records "may well have contained exculpatory information." *Moore v. State*, 294 Ga. App. 570, 575 (1) (d) (669 SE2d 498) (2008). However, in this case, the trial court found that it was not only the failure to provide the medical records that impaired Ivory's defense, but the fact that the State apparently waited in excess of two years to notify Ivory that the medical records could not be located and did so then only in response to a second motion to compel and an order of the trial court. Further, the trial court found that the State still had not accounted for some of the requested items. And of critical distinction here, in *Moore* and cases cited therein, we were "affirming a trial court's finding that the loss of key evidence did not necessarily impair an accused's defense under this factor," id., and specifically noted "[a]lthough this Court may well have found otherwise, we are constrained to affirm the trial court's finding unless there was an abuse of discretion." (Footnote omitted.) Id. at 574 (1) (d). That rule applies with equal force here. Because evidence supported the findings made by the trial court in its analysis of this factor, we likewise find no abuse of discretion in this case.

3. *Balancing of the Four Factors.* In balancing the factors here, the trial court weighed the first two factors against the State, refused to weigh Ivory's failure to assert his right to a speedy trial against him because he could not be blamed for not demanding to be tried when discovery was still outstanding, and weighed the prejudice factor heavily against the State because Ivory could not receive a fair trial since without the missing records "Ivory cannot contest the assertions and conclusions of the State that [he] was shot with a particular type of ammunition or that his statement was freely and voluntarily given and does not have the benefit of having the recordings of the 911 calls." Under these circumstances, we find the trial court did not abuse its discretion in weighing the relevant

factors and dismissing the indictment based on a violation of Ivory's constitutional right to a speedy trial.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 7, 2010.

*Paul L. Howard, Jr., District Attorney, John O. Williams, Assistant District Attorney*, for appellant.

*James W. Bryant*, for appellee.