## A11A0500. THE STATE v. SHIRLEY.

(714 SE2d 636)

MIKELL, Judge.

Finding a violation of his constitutional right to a speedy trial, the trial court granted Ramone Shirley's motion to dismiss indictment. The state argues on appeal that the trial court abused its discretion in applying the balancing test formulated by the United States Supreme Court in *Barker v. Wingo*.[1] For the reasons set forth below, we disagree and affirm.

Shirley was arrested on September 20, 2006, and was subsequently indicted for trafficking in cocaine. He filed his motion to dismiss indictment for delay in prosecution on February 17, 2010. The motion came before the trial court for evidentiary hearings on July 9 and July 19, 2010, and the trial court granted the motion in an order entered on September 8, 2010.

The evidence presented at the motion hearings showed that a confidential informant ("CI") allegedly sold cocaine to Shirley on three separate occasions under the supervision of a team of law enforcement officers. The state's investigation was complete by the time Shirley was indicted on October 3, 2006. On October 10, 2006, Shirley opted into discovery.

Shirley filed a motion to reveal on January 16, 2007. In response, the state conceded that it had an obligation to reveal the identity of the CI. On July 20, 2007, Shirley's case appeared at position 122 on the calendar before Judge Campbell, and the case was noticed to the September 2007 motions calendar. Both parties announced ready at the jury trial calendar conducted before Judge Campbell on March 21, 2008, at which time Shirley's case was listed as position 118. On that same date, Judge Campbell ordered the state to reveal the CI's

---

[1] 407 U. S. 514, 530 (IV) (92 SC 2182, 33 LE2d 101) (1972). Accord *State v. Pickett*, 288 Ga. 674, 675 (2) (a) (706 SE2d 561) (2011); *State v. Porter*, 288 Ga. 524, 525-526 (2) (a) (705 SE2d 636) (2011); see generally *State v. Lattimore*, 287 Ga. 505, 510 (696 SE2d 613) (2010) (Nahmias, J., dissenting).

identity, date of birth, and any monetary or legal consideration provided to the CI on account of his participation in the investigation of the case. The order did not contain a date certain by which the information was required to be disclosed.

After the March 21, 2008 order, the case appeared on numerous trial calendars, and the state announced ready although it had not revealed the CI information to the defense. The prosecutor's notes show that the state consistently asked for a special setting for the trial during that time. The defense announced ready but subject to the state's disclosure of the CI information.

According to the affidavit of Geniece Granville, which was admitted by stipulation, she was assigned to handle the case on November 29, 2009. At a February 16, 2010, calendar call, she announced ready for trial and asked for a special setting to protect the safety of the CI. At the calendar call, Judge Campbell ordered the state to reveal the identity of the CI by February 18, 2010. Shirley served the state with his motion to dismiss on or about February 17, 2010. In filings with the court on February 18 and 22, 2010, Granville identified the CI, his date of birth, and the monetary consideration he received. On May 1, 2010, the case was transferred to Judge Downs, who presided over the hearings on Shirley's motion to dismiss.

1. *Constitutional Framework.* In deciding a speedy trial claim, the threshold inquiry is "whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered presumptively prejudicial. If not, the speedy trial claim fails at the threshold."[2] If the initial inquiry is satisfied, the trial court is required to balance the four *Barker* factors to determine if the accused has been deprived of a speedy trial:

> ■ whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result.[3]

"Standing alone, none of these factors are a necessary, or sufficient condition to a finding of deprivation of the right to a speedy trial, but rather should be considered as part of a balancing test."[4] As noted in

---

[2] (Punctuation and footnote omitted.) *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008).

[3] *Doggett v. United States*, 505 U. S. 647, 651 (II) (112 SC 2686, 120 LE2d 520) (1992), citing *Barker*, supra.

[4] (Citation omitted.) *Layman v. State*, 284 Ga. 83, 84 (663 SE2d 169) (2008).

*Barker*, "[a] balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis."[5] However, the trial court is obligated to provide sufficient findings of fact and conclusions of law to allow appellate review of its *Barker* analysis.[6] We review those findings for abuse of discretion.[7]

2. *The Threshold Inquiry.* For serious crimes lacking unusual complexities, "one year generally marks the point at which expected deliberateness in the prosecution of a criminal matter turns into presumptively prejudicial delay."[8] If a trial has not occurred, the length of the delay is calculated from the date of arrest or other formal accusation to the date of the grant or denial of the speedy trial motion.[9] Here, Shirley was arrested on September 20, 2006, and the trial court decided the motion to dismiss on September 8, 2010, nearly four years later. We agree with the trial court that the threshold of presumptive prejudice was met, triggering the second stage of the constitutional speedy trial analysis.

3. *The Barker Factors.*

(a) *Length of the Delay.* The state does not challenge the trial court's finding that the length of the delay was uncommonly long and should be weighed heavily against the state.

(b) *Reasons for the Delay.* An analysis of this factor involves assessment of "the reason for the delay and whether this is attributable to the defendant or the state."[10] Delays attributable to the state fall along a spectrum from "delay resulting from, or in spite of, the State's diligent prosecution of the case," which will rarely support a speedy trial claim, to "deliberate delay to gain an improper advantage over the accused, including delays designed to hamper a defendant's ability to mount a successful defense."[11] The latter "will virtually always result in a dismissal of the case against the defendant, because it strikes at the very heart of the speedy trial guarantee."[12] The delay in many cases lies with "some type of official neglect," which falls within the middle of the spectrum.[13]

The trial court concluded that no meaningful part of the delay was attributable to the defense. The state, it found, had "strategi-

---

[5] *Barker*, supra.

[6] See *Higgenbottom v. State*, 288 Ga. 429, 430-431 (704 SE2d 786) (2011).

[7] *Lattimore*, supra at 506.

[8] (Footnote omitted.) *Ruffin*, supra at 55 (2) (a).

[9] See *Porter*, supra at 526 (2) (b).

[10] (Citation and punctuation omitted.) *State v. Johnson*, 274 Ga. 511, 512 (555 SE2d 710) (2001).

[11] (Citation and punctuation omitted.) *Hayes v. State*, 298 Ga. App. 338, 342 (2) (b) (680 SE2d 182) (2009).

[12] (Citation and punctuation omitted.) Id.

[13] Id.

cally delayed the prosecution of the case in order to gain a tactical advantage over the defense and to harass the Defendant." The trial court therefore weighed this factor heavily against the state. The state assigns error to the trial court's findings, arguing that the trial court abused its discretion because there was no evidence that the state deliberately attempted to delay Shirley's trial in order to hamper the defense, and that the delay in the trial was actually due to tremendous caseloads, change of judges, and overcrowded dockets.

The trial court did not abuse its discretion in failing to accept the state's explanation for the delay. For one thing, the trial court was peculiarly well suited to assess the import of evidence related to the caseload, docket, and trial calendar of the very court on which it sat. In addition, other facts tended to show that the delay in the case was due to the state's deliberate choices and not more benign factors, such as overcrowded dockets. The trial court found, and the evidence showed, that this was a standard narcotics case and that the state had completed its investigation by the time Shirley was indicted in October 2006. The state admitted that it was required to reveal the CI's identity to Shirley, and the state was also under a court order to disclose the CI information. The case could not proceed to trial until the state provided the CI information, yet that information remained intentionally undisclosed for years. Since prosecutors made deliberate choices that led to the unreasonable delay in reaching trial, the trial court would have been authorized to weigh the reasons for the delay against the state even if it had not found that the state delayed the prosecution in order to gain an advantage over Shirley.[14]

We disagree with the state that the trial court erred in finding that the state deliberately delayed the trial in order to hamper the defense. The trial court noted that the state's investigation had been completed for years, that the case had been pending for years, and that the state had ignored Judge Campbell's order for almost two years. Meanwhile, "[e]ach time the [s]tate appeared at the calendar call [it] announced ready knowing that it had not complied with Judge Campbell's order or with its basic discovery obligations pursuant to OCGA § 17-16-8." Accordingly, the trial court found that the state "intended the defense to be prepared in a 'last-minute scramble'" and that such "gamesmanship" should be weighed heavily against the state.

---

[14] *Jackson v. State*, 272 Ga. 782, 784 (534 SE2d 796) (2000) ("While there is no evidence that this was a deliberate attempt to 'hamper the defense,' neither is it negligence which is 'relatively benign.' It is therefore weighted against the state") (footnote omitted); *Hayes*, supra at 344 (2) (b) ("delays resulting from deliberate decisions made by the State, strategic or otherwise, cannot be considered benign and must be weighted more heavily against the State") (citation omitted).

We are sympathetic to the state's claim that its delay in releasing the CI information was attributable to its concern for the safety of the CI. We cannot say, however, that the trial court was required as a matter of constitutional law, state or federal, to find the state's position credible, especially given that the state did not support its generalized concerns for the CI's safety with specific evidence. The state correctly points out that Judge Campbell's 2008 order does not have a date certain for compliance, but it does not follow that the state could therefore delay the trial for years. Nor was the trial court required to accept the state's proffered reasons for announcing ready at calendar calls when it was not, in fact, ready to try the case.[15] As a general principle, where "there is evidence on both sides of [the] case[,] this court will not substitute its opinion concerning the weight of the evidence for that of the factfinder."[16] The trial court could infer from the evidence that the state had delayed the trial in order to gain an improper advantage over the defense and therefore, even if this Court would have ruled differently, we cannot find the trial court abused its discretion in so finding. It follows that the trial court did not err in weighing the reasons for the delay heavily against the state.

(c) *Assertion of the Right to Speedy Trial.* The trial court found that Shirley asserted his right to speedy trial in due course. "The accused is not required to demand a speedy trial at the first available opportunity, for the Supreme Court has expressly rejected the demand-waiver approach to the constitutional speedy trial right."[17] However, a defendant bears some responsibility to invoke his speedy trial rights so as to put the government on notice that he prefers to be tried as soon as possible.[18] Whether a defendant has asserted the right to speedy trial in due course "requires a close examination of the procedural history of the case with particular attention to the timing, form, and vigor of the accused's demands to be tried immediately."[19]

The state contends that because approximately three years and

---

[15] When the trial court asked an assistant district attorney why she had announced ready without having submitted the CI information, she indicated that the state was ready "once we got a special setting." However, it does not appear that the case was ever specially set for trial. In response to questioning by the trial court, the assistant district attorney was also unwilling to confirm that the state needed the special setting to try the case. The trial court in its order mentioned that it does not accept the state's argument that to protect the CI the state was justified in delaying the trial (by delaying compliance with Judge Campbell's order) until it received a "special setting," i.e., a date certain for the trial to begin.

[16] (Citation and punctuation omitted.) *Turner v. Trammel*, 285 Ga. 847, 848 (684 SE2d 623) (2009).

[17] (Footnote omitted.) *Ruffin*, supra at 62 (2) (b) (iii).

[18] Id.

[19] (Footnote omitted.) Id. at 63.

five months passed from the time of Shirley's arrest to the filing of his motion to dismiss, the trial court should have weighed Shirley's delay in asserting his right to a speedy trial heavily against the defense. It is true that a delay between three and four years in asserting the right to a speedy trial is normally required to be weighed heavily against a defendant.[20] Nevertheless, the trial court is entitled to consider mitigating circumstances in balancing this factor.[21]

Here, the trial court noted that Shirley had to file a motion and obtain an order requiring the state to reveal the CI, and that in the two-year period after the issuance of the order defense counsel appeared at numerous trial calendars and informed the state that he was ready to try the case subject to receipt of the CI's identity. We have accepted, as an appropriate mitigating circumstance in weighing this factor, a trial court's finding that a defendant "cannot be faulted for demanding that the [s]tate comply with discovery obligations before trial began."[22] Similarly, in this case the trial court was not required to fault Shirley for deciding to appear at calendar calls and announce ready, subject to the state's compliance with its obligation to reveal the CI, as opposed to formally demanding an immediate trial.[23] We recognize that the trial court might have exercised its discretion differently.[24] Nevertheless, the circumstances of the case supported the trial court's decision not to weigh this factor against Shirley,[25] and we find no abuse of discretion.

(d) *Prejudice to the Defendant.* The trial court found that Shirley was not required to show that he was actually prejudiced by the delay. It further concluded that, examining the delay in relation to other factors,[26] Shirley had established a presumption of prejudice

---

[20] See *Brown v. State*, 287 Ga. 892, 895 (1) (c), 896 (2) (c) (700 SE2d 407) (2010) (co-defendants' respective two- and three-year delays in asserting right to speedy trial weighed heavily against them); *Layman*, supra at 86 (under the circumstances, four-year delay in asserting right to speedy trial weighed heavily against defendant).

[21] See *State v. White*, 282 Ga. 859, 862 (2) (c) (655 SE2d 575) (2008).

[22] (Punctuation omitted.) *State v. Ivory*, 304 Ga. App. 859, 862-863 (2) (c) (698 SE2d 340) (2010).

[23] See also *State v. Moses*, 301 Ga. App. 315, 319-320 (2) (c) (692 SE2d 1) (2009) (factors warranting mitigation included defendant's appearance and announcement of ready for trial when state was not prepared to try the case).

[24] See *Williams v. State*, 300 Ga. App. 797, 798 (c) (686 SE2d 407) (2009) (trial court did not err in weighing the reasons for the delay against the defendant notwithstanding her contention that the state had not complied with her discovery requests).

[25] See *Ivory*, supra at 864 (3) ("the trial court . . . refused to weigh Ivory's failure to assert his right to a speedy trial against him because he could not be blamed for not demanding to be tried when discovery was still outstanding").

[26] "[T]he presumptive prejudice that arises from the significant delay in [the defendant's] trial cannot alone carry his Sixth Amendment claim without regard to the other *Barker* criteria. Instead, it is part of the mix of relevant facts, and its importance increases with the

that the state had not rebutted.[27]

The trial court's analysis was correct in that "[a] defendant need not show demonstrable prejudice to prevail on a speedy trial claim."[28] "[O]nce the threshold of presumptive prejudice is satisfied, a presumption of prejudice always exists, although it increases in weight over time."[29] Citing our decision in *Gray v. State*,[30] the state insists that "unless all of the first three *Barker* factors weigh heavily against the [s]tate, [the defendant] must demonstrate actual prejudice to succeed in his motion to dismiss."[31] However, in *Porter*,[32] our Supreme Court has recently rejected this formulation, finding it to be "inconsistent with the flexible balancing test required by *Barker* and this Court's precedents."[33] Accordingly, the trial court did not err in finding that Shirley had been prejudiced by the delay.

(e) *Balancing the Four Factors*. The trial court, in light of its previous findings, but without specifically balancing the four factors, granted Shirley's motion to dismiss the indictment. Although the trial court did not expressly balance the factors, each factor, as previously considered, was consistent with a finding that Shirley's constitutional right to a speedy trial had been violated. Accordingly, there was little balancing required.[34]

In addition, we have, albeit reluctantly, accepted the trial court's finding that the state delayed the trial to gain an improper advantage. This finding is, of course, an inference from the evidence. It is elementary that on appellate review, all inferences are supposed to be drawn to support the decisions of the finder of fact.[35] The circumstance that one or all of the judges of this court might have drawn a different inference is irrelevant to whether we should affirm

---

length of delay." (Punctuation and footnotes omitted.) *Harris v. State*, 284 Ga. 455, 456-457 (667 SE2d 361) (2008).

[27] As our Supreme Court has noted:
The weight given to the prejudice factor may be bolstered if the defendant can demonstrate some actual impairment to his defense in addition to prejudice that is presumed from the passage of time. Likewise, the weight given to presumed prejudice may be reduced or even eliminated if the [s]tate can show that the defense has not, in fact, been substantially impaired.
*Porter*, supra at 532 (2) (d).

[28] (Citation omitted.) *Pickett*, supra at 677 (2) (c) (4).

[29] (Citations omitted.) *Porter*, supra at 531 (2) (c) (4).

[30] 303 Ga. App. 97 (692 SE2d 716) (2010).

[31] Id. at 101-102 (d) (iii), citing *United States v. Ingram*, 446 F3d 1332, 1338 (IV) (11th Cir. 2006).

[32] Supra.

[33] Id. at 533 (2) (d), n. 4, citing *Ingram*, supra at 1337-1338 (IV).

[34] See *Porter*, supra at 532 (2) (d) ("If all four factors point in one direction, the result of weighing them together will be clear").

[35] It would pervert the appellate system for us to find an abuse of discretion or to find the trial judge's inference clearly erroneous whenever we disagreed with him or her.

148

or reverse.[36] Such a finding, as previously noted, virtually always results in a dismissal of the case against the defendant.[37] Accordingly, the trial court's dismissal of the indictment is affirmed.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED JUNE 30, 2011 —
RECONSIDERATION DENIED JULY 26, 2011.

*Paul L. Howard, Jr., District Attorney, Lenny I. Krick, Assistant District Attorney*, for appellant.
*Bruce S. Harvey*, for appellee.

---

[36] However, if there is no evidence in the record to support the inference, it will be disallowed.

[37] See *Hayes*, supra at 342 (2) (b).