**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 21, 2023**

# In the Court of Appeals of Georgia

A22A1741. THE STATE v. RAY.

GOBEIL, Judge.

This is the third appearance of this criminal matter before this Court. See *Ray v. State*, 345 Ga. App. 522 (812 SE2d 97) (2018) ("*Ray I*"); *Ray v. State*, 356 Ga. App. 266 (2020) (841 SE2d 477) ("*Ray II*"). In this appearance, the State appeals after the trial court vacated James Roy Ray's convictions and dismissed the indictment against him, barring further proceedings. For the reasons set forth below, we affirm the trial court's order.

Though its ultimate holding was framed in terms of Ray's ineffective assistance of trial counsel claim, the trial court's order also found that Ray's right to a speedy trial was denied. Thus, "our role as a court of review is a limited one" because the application of the Constitution's speedy-trial principles as outlined by the Supreme

Court to the circumstances of a particular case "is a task committed principally to the discretion of the trial courts." *State v. Buckner*, 292 Ga. 390, 391 (738 SE2d 65) (2013) (footnote omitted). Accordingly,

> we must accept the factual findings of the trial court unless they are clearly erroneous, and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion, even though we might have reached a different conclusion were the issue committed to our discretion.

Id. (citations omitted).

So viewed, we begin with a brief summary of the facts established at trial and as described in our prior opinions.

> [T]he evidence shows that the victim, a mentally challenged adult, lived with her aunt and several cousins. Ray, who was also related to the victim, visited the home on occasion, and the family spent time at his house, as well. In December 2009, the victim disclosed to a family member that Ray had assaulted her. The victim's aunt reported the disclosure to the police.
>
> During the ensuing investigation, the victim submitted to a forensic interview and described several instances of sexual abuse by Ray. The victim confirmed that abuse at trial, testifying that on various occasions

Ray had inserted his "boy part" into her "girlie part," touched her "girlie part" with his tongue and finger, placed a sex toy on her "girlie part," and touched her breast with his tongue. She further testified that Ray never asked whether he could touch her, that she did not want to have sexual relations with him, and that the encounters made her feel dirty.

*Ray I*, 345 Ga. App. at 523.

Ray first was indicted for sexual battery and two counts of aggravated battery in February 2011. More than four years later, in June 2015, his indictment was amended with additional charges, including rape. After a ten-day trial that began on March 28, 2016, the jury found Ray guilty of rape and two counts of sexual battery and found him not guilty on the other charges. The trial court sentenced him to life, with 25 years to serve in confinement.

After the trial court denied his motion for new trial, Ray appealed, and we rejected most of his claims of error. See *Ray I*, 345 Ga. App. at 523-527 (1), (2), (3) (a)-(e). However, we expressed concern about Ray's claim that he received ineffective assistance of counsel based on counsel's failure to seek dismissal of the indictment for a speedy trial violation. Id. at 527-529 (3) (f). Specifically, we could not determine whether the trial court "conducted the appropriate analysis" in denying the claim. Id. at 528 (3) (f). Thus, we vacated the trial court's denial of Ray's motion

for new trial and remanded for the trial court to conduct a *Barker-Doggett*[1] analysis and issue an order detailing its findings and conclusions regarding Ray's speedy trial rights and counsel's effectiveness in this regard. Id. at 528-529 (3) (f).

We also remanded on an evidentiary issue. Id. at 529-530 (4). Specifically, Ray had asserted "that the trial court erred in excluding evidence that the victim's aunt had, on several previous occasions, falsely accused other individuals of sexual misconduct." Id. at 529 (4). As we explained,

> Ray's primary defense at trial was that various individuals had convinced the mentally disabled victim to fabricate the allegations against him. He certainly claimed that the victim was influenced before the December 29, 2009 interview. But through his cross-examination of the victim and other witnesses, Ray also intimated that relatives and state officials had influenced her trial testimony after the interview occurred.

Id. at 524 (1) (emphasis omitted). Ray believed that the victim's aunt, Mae Holcombe ("Mae"), had influenced the victim to make a false report. See id. at 529 (4). Mae, however, had passed away approximately one year before Ray's trial began.

---

[1] *Barker v. Wingo*, 407 U. S. 514, 530 (IV) (92 SCt 2182, 33 LE2d 101) (1972) and *Doggett v. United States*, 505 U. S. 647, 651 (II) (112 SCt 2686, 120 LE2d 520) (1992) (establishing four-part balancing test to determine whether the defendant has been deprived of his right to a speedy trial).

At a pretrial hearing, Ray was able to proffer testimony from Mae's daughter Leona implying that Mae had coaxed her into falsely reporting a rape. See *Ray II*, 356 Ga. App. at 267. There were also allegations that Mae had invented sexual abuse allegations against Leona's daughter's father during a custody dispute. A report from the child's guardian ad litem corroborated the theory that the child had been coached to make false allegations against her father, and when questioned about her participation in such coaching, Leona pleaded the Fifth Amendment. Finally, Ray's attorney raised allegations that Mae had accused other family members of having inappropriate sexual contact with the victim. Ultimately, the trial court ruled that all of the testimony and evidence concerning Mae's prior false allegations was inadmissible at trial. In Ray's first appeal, we remanded on this issue, instructing the trial court to make a determination about the "reasonable probability" that the prior reports of sexual abuse were false. *Ray I*, 345 Ga. App. at 529-530 (4). If the court found that the prior reports were probably false, the evidence would have been admissible based on precedent at it existed at that time. Id.[2]

_____

[2] See *Smith v. State*, 259 Ga. 135, 137-138 (1) (377 SE2d 158) (1989) (evidence of a prior false allegation of sexual abuse was admissible during trial following "a threshold determination [made by the trial court outside the presence of the jury] that a reasonable probability of falsity exists") (citation and punctuation omitted).

The Supreme Court later overruled *Smith* in part, vacating our opinion in *Ray I* and remanding for us to reconsider the decision in light of the new holding. *State v. Burns*, 306 Ga. 117, 123-124 (2) (829 SE2d 367) (2019) (abrogating the "per se rule of admissibility for evidence of prior false allegations" of sexual abuse). On remand, we altered our instructions to the trial court, explaining that the trial court must conduct a hearing and apply the Rule 403 balancing test to determine whether the probative value of the evidence of Mae's prior false report of sexual battery was substantially outweighed by the possibility of unfair prejudice, confusion of the issues, or the potential to mislead the jury. *Ray II*, 356 Ga. App. at 269-270.

On remand, the trial court conducted a hearing on both issues. The court then issued an order vacating Ray's convictions, dismissing the indictment against him, and barring further proceedings. On the evidentiary issue, the trial court first found that Ray had not established a substantial probability that Mae had made false accusations of sexual assault in the past. Nonetheless, the trial court went on to conduct a Rule 403 balancing test, finding that the probative value of allowing the

defense to cross-examine Mae on the allegations would not have been substantially outweighed by danger of unfair prejudice, or confusion or misleading of the jury.[3]

The court next considered Ray's ineffective assistance of counsel claim based on counsel's failure to move to dismiss the indictment on speedy trial grounds. Ultimately, the trial court weighed the *Barker-Doggett* factors primarily against the State and found that the delay resulted in prejudice to Ray. The trial court concluded that, had counsel filed a motion to dismiss the indictment against Ray, it would have been granted; thus, Ray received ineffective assistance of counsel and his conviction was due to be vacated. The State now appeals.

1. The State's primary argument on appeal is that the trial court erred in concluding that Ray received ineffective assistance of counsel as it pertains to counsel's failure to file a plea in bar on speedy trial grounds.

---

[3] We have noted a lack of clarity in the law after *Burns* as to whether the trial court must first find a probability of falsity of prior sexual abuse allegations before moving on the Rule 403 balancing test to determine whether this kind of evidence is admissible. See *Vallejo v. State*, 362 Ga. App. 33, 48 (865 SE2d 640) (2021) (Gobeil, J. concurring fully and specially); *McNeil v. State*, __ Ga. App. __ (3) (b) (n. 3) (871 SE2d 303) (2022). However, because we affirm the trial court's ruling that Ray received ineffective assistance of counsel, we need not address the evidentiary issue further.

"To prevail on a claim of ineffective assistance of counsel for failing to file a motion to dismiss on speedy trial grounds, [Ray] must show that the motion would have been granted had it been filed." *Chalk v. State*, 318 Ga. App. 45, 48 (1) (c) (733 SE2d 351) (2012). "When considering a motion to dismiss on speedy trial grounds, the trial court must conduct a two-part test as set forth in the United States Supreme Court decisions" in *Barker* and *Doggett*. Id.

> The analysis has two stages. First the court must determine whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered "presumptively prejudicial." If not, the speedy trial claim fails at the threshold.

*State v. Ivory*, 304 Ga. App. 859, 861 (698 SE2d 340) (2010) (citation and punctuation omitted).

As a threshold matter, the trial court correctly found that the 61-month delay between Ray's indictment and trial was presumptively prejudicial. See *Ditman v. State*, 301 Ga. App. 187, 189 (1) (687 SE2d 155) (2009) (delays approaching one year meet the presumptive prejudice threshold). Further, the State does not contest such a finding. Accordingly, the trial court correctly proceeded "to the second step of the *Barker–Doggett* analysis, which requires the application of a delicate, context-sensitive, four-factor balancing test to determine whether the accused has

8

been deprived of the right to a speedy trial." *Ivory*, 304 Ga. App. at 861 (citation and punctuation omitted).

The four factors include: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Johnson v. State*, 268 Ga. 416, 417 (2) (490 SE2d 91) (1997).

> No one factor is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. The four factors emphasized in *Barker* and *Doggett* do not constitute an exhaustive list; they have no talismanic qualities and must be considered together with such other circumstances as may be relevant given the animating principles behind the speedy trial guarantee. Thus, the second stage of the constitutional speedy trial analysis requires courts to engage in a difficult and sensitive balancing process and necessarily compels them to approach speedy trial cases on an ad hoc basis.

*Ruffin v. State*, 284 Ga. 52, 55-56 (2) (b) (663 SE2d 189) (2008) (citations and punctuation omitted). See also *Ditman*, 301 Ga. App. at 190 (2).

We now review the trial court's findings under these factors, again mindful that our review is limited in cases where the trial court has discretion and its factual findings are given deference. *Buckner*, 292 Ga. at 391; *Ivory*, 304 Ga. App. at 860 (order granting motion to dismiss indictment for speedy trial violation is reviewed for

9

abuse of discretion, deferring to trial court's factual findings and weighing of disputed facts). Additionally, the trial court's factual findings "made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous." *Kittrell v. State*, 358 Ga. App. 93, 95 (853 SE2d 678) (2021) (citation and punctuation omitted).

(a) Regarding the length of the delay, the trial court weighed this factor against the State. In doing so, the trial court found that the 61-month delay was uncommonly long and noted that the State bears the responsibility for bringing cases to trial. The State makes no argument on this factor, and we find no abuse of discretion in weighing this factor against the State. As the Supreme Court has noted, "[e]xcessive delay has a tendency to compromise the reliability of trials in ways that neither party can prove or, for that matter, identify," and the importance of this factor "increases with the length of delay." *Ruffin*, 284 Ga. at 56-59 (2) (b) (i) (citations and punctuation omitted). Accordingly, here, where the delay was more than double what our Supreme Court has called "exceptionally long," this factor must be said to weigh heavily against the State. See id. (finding a 26-month pretrial delay "exceptionally long").

(b) Considering the next factor, reasons and responsibility for the delay, the trial court found that the State was more to blame for the delay. The trial court found that the case lingered in the prosecutor's office for years with no explanation before a new prosecutor took over the case and began pushing toward trial. Additionally, a State's expert witness lost their notes, which delayed the defense's expert witness's ability to prepare. We find no error in the trial court's weighing of this factor against the State. Indeed, the State's either willful or benign negligence in failing to bring Ray's case to trial for more than five years was due at least moderate weight against the State, particularly where the trial court has found that the State intended to allow the case to dead docket. See *Hayes v. State*, 298 Ga. App. 338, 341-345 (2) (b) (680 SE2d 182) (2009) (where the State made the decision to dead-docket a case rather than dismiss it or bring it to trial, this factor should weigh heavily against the State); *Ruffin*, 284 Ga. at 59-62 (2) (b) (ii) (explaining that deliberate delay is to be weighed heavily against the State, and even mere negligence is to be weighed against the State, especially when delay is uncommonly long).

(c) The next factor is Ray's assertion of his right to a speedy trial. There is no dispute that Ray did not file a speedy trial demand during the years-long delay, and he did not assert his right to a speedy trial until after he was convicted. The trial court

11

acknowledged this fact and ultimately weighed this factor against Ray. The trial court also found that the State was not blameless on this factor, as the State had "led the defense to believe the charges would be dismissed which actively discouraged the defense from pursuing a speedy trial demand." We find no abuse of discretion in the trial court's assignment of fault on this factor.

According to the State, the trial court erred in assigning any blame to the State for the defendant's decision not to assert his right to a speedy trial and the trial court should have weighed this factor more heavily against Ray. As the trial court noted, "the filing of a speedy trial demand is not a prerequisite for a plea in bar for failure to have a speedy trial on constitutional grounds." *Hester v. State*, 268 Ga. App. 94, 99 (3) (601 SE2d 456) (2004) (citation omitted). Where a defendant fails to assert his right to a speedy trial for years, normally this factor would weigh heavily against him. Id. at 98 (3). However, we have acknowledged that mitigating circumstances may change the weight of this factor. Id.; see also *State v. Allgood*, 252 Ga. App. 638, 640 (3) (556 SE2d 857) (2001) (noting that defendant's failure to file speedy trial demand for years was mitigated by State's actions in failing to prosecute the case during the interim); *State v. Redding*, 274 Ga. 831, 833-834 (561 SE2d 79) (2002) (fact that State represented to defendant that his case would be dead-docketed authorized trial

12

court's finding that defendant's failure to assert his right to a speedy trial was not weighed against him). Thus, the trial court's findings are not an abuse of discretion.

The State argues further that trial counsel's strategic decision not to file a speedy trial demand or plea in bar was reasonable, given his belief that the delay might ultimately benefit Ray. Thus, there can be no ineffective assistance of trial counsel, where the decision was based on reasonable strategy.

Indeed, our Supreme Court has noted repeatedly that "[w]hether to file a demand for speedy trial is usually a matter of trial tactics and strategy, as a delay in bringing the case to trial may work to a defendant's advantage." *Smith v. State*, 297 Ga. 214, 217 (5) (a) (773 SE2d 209) (2015) (quoting *Jones v. State*, 296 Ga. 561, 569 (6) (769 SE2d 307) (2015); (punctuation omitted)). See also *Brock v. State*, 293 Ga. 156, 159-160 (2) (d), (3) (743 SE2d 410) (2013) (trial counsel did not file speedy trial demand for strategic reasons, believing that the State's case would fall apart over time; trial court discounted defendant's testimony that he desired counsel to file the demand). And to prevail on his ineffective assistance of counsel claim, Ray must show that trial counsel's performance was deficient, with "a strong presumption that counsel's conduct falls within the range of sound trial strategy and reasonable professional judgment." *Brock*, 293 Ga. at 160 (3).

13

However, the cases cited above and relied upon by the State on this issue differ from Ray's case in at least two notable ways. First, in those cases, the trial court found no ineffective assistance of counsel; whereas here, the trial court found that trial counsel was ineffective because, had he filed a motion to dismiss the indictment, it would have been granted. Accordingly, in the instant appeal, the standard of review, which is deferential to the trial court's findings, weighs in Ray's favor.

Second, Ray is not asserting that counsel was ineffective for failing to file a speedy trial demand. Indeed, it appears from the record that such decision was strategic and reasonable, as the State had led Ray's defense to believe that the case was not a priority and may be dead-docketed. However, whether to file a speedy trial demand is different than whether to file a motion to dismiss the indictment for a speedy trial violation. Once a certain length of time had passed, most of which the trial court attributed to the State's failure to proceed, there was no strategic reason not to seek dismissal of the indictment against Ray.

As described throughout our opinion, there is extensive case law supporting the dismissal of Ray's indictment after such a lengthy delay. Trial counsel was made aware that, although the State had dead-docketed the case, it had received push back from the victim's family and "didn't have a choice" but to proceed with prosecuting

14

the case. Thus, there was no longer any strategic reason for counsel to hold off filing a motion to dismiss the indictment, as the State had made clear that the case was being revived no matter what. Accordingly, we conclude that the trial court's findings on these issues were within its discretion, and defer to its finding that the third *Barker-Doggett* factor should weigh against Ray but be mitigated by the State's actions.

(d) Finally, for the fourth factor, the trial court found that Ray's defense was prejudiced by the delay, specifically because his ability to mount a defense was impaired.

> The final factor in the *Barker* analysis is prejudice to the defendant. The types of prejudice associated with an unreasonable delay before trial include oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the (accused's) defense will be impaired by dimming memories and loss of exculpatory evidence. Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*State v. Pickett*, 288 Ga. 674, 677 (4) (706 SE2d 561) (2011) (citations and punctuation omitted). "In order to show prejudice due to the unavailability of a witness, [Ray] must show that the missing witness could supply material evidence for

15

the defense." *State v. Bonawitz*, 339 Ga. App. 299, 305 (2) (d) (793 SE2d 191) (2016) (citation and punctuation omitted).

The trial court refers to Mae as a material witness for the defense who was unable to be confronted by Ray due to her untimely death. The trial court provided examples of evidence admitted at trial, including a journal written by the victim with Mae's assistance, that Ray was unable to challenge due to Mae's absence. Further, the trial court noted theories that the defense desired to pursue that were unavailable to Ray after Mae's death, such as Mae's abusive demeanor toward the victim and Mae's prior instances of coercing family members into reporting sexual assault. The trial court highlighted other examples of prejudice to Ray from the delay unrelated to Mae, including from interruptions in the expert witnesses' abilities to testify,[4] and the fact that Ray ultimately was convicted of more serious charges that were not included in his original indictment. Accordingly, the trial court found that, in addition to the length of the delay being presumptively prejudicial, Ray also showed actual prejudice to his defense from the delay. Ultimately, the trial court found that this

---

[4] We note that these findings have support in the record, as trial counsel testified at Ray's original motion for new trial hearing that he believed Ray's defense was significantly impaired by the delay, both because of his inability to confront Mae as a witness and because of the effect of the defense expert's injury and the State's expert's loss of data.

factor weighed against the State, and led the court to conclude that Ray's counsel was ineffective for failing to seek a dismissal of the indictment.

A significant portion of the State's argument is based on its framing of Mae's involvement in the facts of the case, referring to her as nothing more than a "narrative witness." The State argues vehemently that Mae was not of great importance to the State's case and that the trial court misstated her involvement leading up to Ray's indictment. Further, the State argues that Ray presented no evidence to substantiate his allegation that Mae had made prior false accusations of sexual assault, rendering her absence even less significant. Ultimately, the State asserts that the trial court's weighing of this factor in its *Barker-Doggett* balancing test greatly overstated the prejudice to Ray caused by Mae's death before his trial occurred.

However, we cannot say that the trial court clearly erred in its assessment concerning Mae's potential influence on the trial had she survived. The trial court made specific references to evidence introduced at trial that could have had a different effect had Mae been available for cross-examination, and other evidence that was not presented at trial because of her death. As the judge who presided over Ray's trial and subsequent proceedings, the trial court was in the best position to determine the influence that Mae's absence may have had on the trial. See *State v. Jackson*, 306

17

Ga. 626, 629-631 (1) (831 SE2d 798) (2019) (trial judge is in the best position to determine prejudice of improper closing argument). Further, Mae's absence was only one of several reasons included by the trial court in its determination of prejudice. And, because there was such a lengthy delay in this case, the trial court's finding of prejudice is supported by the presumption of prejudice. See *Hayes*, 298 Ga. App. at 341 (2) (b) (presumption of prejudice strengthens as delay increases). Accordingly, we defer to the trial court on this final factor and agree that it weighed against the State.

Having determined that three of the four *Barker-Doggett* factors weighed against the State to some degree,[5] and finding that the only factor weighing against Ray was mitigated by the State's actions, the trial court found that Ray's speedy trial rights were violated and had counsel filed a motion to dismiss the indictment, it would have been granted. We find this determination to be within the trial court's discretion, and we thus affirm the trial court's order vacating Ray's convictions and barring further proceedings. Compare *Ivory*, 304 Ga. App. at 864 (3) (affirming

---

[5] The trial court order erroneously states in its conclusion that "[a]ll of the factors under the *Barker-Doggett* analysis weigh more heavily against the state," which is in contrast with its earlier conclusion that Ray's failure to assert his right to a speedy trial weighed against him.

18

dismissal of indictment for a violation of defendant's speedy trial rights; delay was presumptively prejudicial and defendant's ability to prepare his defense was damaged), with *Chalk*, 318 Ga. App. at 50 (1) (c) (v) (counsel was not ineffective in failing to file a motion to dismiss indictment on speedy trial grounds because defendant did not show that such motion would have succeeded where the delay did not prejudice the defense).

2. Because we affirm the trial court's finding that Ray received ineffective assistance of counsel and his convictions must be vacated on that ground, we need not address the trial court's other finding concerning the potential evidentiary error committed at his trial.

*Judgment affirmed. McFadden, P. J., and Land, J., concur.*

19