**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**November 20, 2012**

# In the Court of Appeals of Georgia

A12A1102. THE STATE v. HARTSFIELD.

BRANCH, Judge.

The State previously appealed the trial court's grant of Eugene Hartsfield's motion to dismiss his indictment for violation of his constitutional right to a speedy trial. On review, we vacated the trial court's order and remanded the case for reconsideration because some of the trial court's findings of fact were not supported by the record and because the court made other errors. *State v. Hartsfield*, 308 Ga. App. 753, 754-755 (1) (711 SE2d 1) (2011). Upon remand, the trial court reconvened the hearing and received further evidence from Hartsfield; the State offered no evidence. The court again granted Hartsfield's motion to dismiss, and the State again appeals.

The procedural facts set out in the prior appeal show the lengthy passage of time in this case:

> Hartsfield was arrested on April 16, 2005. He was indicted on April 14, 2009, for aggravated battery, aggravated assault, and three counts of violation of oath by a public officer. The case was placed on a trial calendar in July 2010, but on July 30, 2010, Hartsfield filed a motion to dismiss the indictment for violation of his right to a speedy trial under the state and federal constitutions. The trial court granted the motion on August 6, 2010, and the state filed this [first] appeal.

Id. at 753. After this court vacated the trial court's order and remanded the case, the trial court held the second hearing on October 5, 2011 , and it granted Hartsfield's speedy trial motion anew on January 4, 2012.

As noted in the earlier appeal, constitutional speedy trial claims are governed by the framework laid out in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), and *Doggett v. United States*, 505 U. S. 647 (112 SC 2686, 120 LE2d 520) (1992). *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008). The analysis has two stages:

> In the first stage of the analysis, the court must determine whether the pretrial delay is sufficiently long to be considered presumptively prejudicial. . . . If the delay has passed the point of presumptive prejudice, the court must proceed to the second step of the *Barker-*

2

*Doggett* analysis, which requires the application of a delicate, context-sensitive, four-factor balancing test to determine whether the accused has been deprived of the right to a speedy trial.

(Citations, punctuation and footnote omitted.) *Ferguson v. State*, 303 Ga. App. 341, 342 (693 SE2d 578) (2010). "The four factors to be considered in the case of presumptively prejudicial delay are (a) the length of the delay, (b) the reason for the delay, (c) the defendant's assertion of his right, and (d) the prejudice to the defendant." (Citation omitted.) *Hartsfield*, 308 Ga. App. at 753 (1).

We must determine whether the trial court abused its broad discretion in ruling that Hartsfield's speedy trial rights were violated. *State v. Gleaton*, 288 Ga. 373, 375 (703 SE2d 642) (2010). Nevertheless, "where. . . the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished." *Williams v. State*, 277 Ga. 598 (1) (e) (592 SE2d 848) (2004).

(a) As in the earlier appeal, the State concedes and the trial court properly found that the 48-month delay from Hartsfield's arrest to his indictment plus the subsequent 15-month delay prior to Hartsfield's initial motion to dismiss was presumptively prejudicial.

3

(b) Given that the threshold inquiry has been met, the trial court must again consider the length of the delay:

> [T]he length of the delay should be considered by the trial court again "by factoring it into the prejudice prong of the *Barker* analysis, with the presumption that pretrial delay has prejudiced the accused intensifying over time." The presumptive prejudice arising from the delay is "part of the mix of relevant facts, and its importance increases with the length of delay," but it "cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria."

(Footnotes omitted.) *Harris v. State*, 314 Ga. App. 565, 566 (b) (i) (724 SE2d 864) (2012).

The State concedes the trial court correctly weighed the length of the delay in favor of Hartsfield, and we agree. The delay here was uncommonly long given that the case involves only one brief incident between two people: Hartsfield, a P.O.S.T. certified[1] officer and an employee of the Georgia Department of Juvenile Justice, who was working an approved second job providing security for a nightclub; and a patron

---

[1] The Georgia Peace Officer Standards and Training Act, OCGA § 35-8-1 et seq., establishes the Georgia Peace Officers' Standards and Training Council (P.O.S.T.), and that entity determines whether a candidate "is qualified to be employed as a peace officer" and "issues a certificate to those so qualified." OCGA § 35-8-7 (12).

4

of that nightclub. Hartsfield was charged with aggravated battery, aggravated assault, and three counts of violation of an oath by a public officer for allegedly hitting the patron with a flashlight.

(c) The first contention on appeal is that the trial court, for the second time, erred in its analysis of the second factor – the reason for the delay. In the first appeal, we found that the trial court erred in concluding that the reason for the delay was "far from benign." *Hartsfield*, 308 Ga. App. at 754-755 (1) (c). In its order upon remand, the court noted that despite a second hearing regarding the matter, "[t]he State elected at the original hearing, and at the hearing reconvened on remand, to present no explanation whatsoever" for the reason for the four-year delay in indicting Hartsfield. The court emphasized that "the State [ ] stood mute and offered no explanation for the reason for the preindictment delay." The court offered its interpretation of the State's position:

> The Court construes this silence as, at best, an admission that there is no explanation for the delay, or, at worst, a desire to avoid acknowledging a more egregious reason for delay (such as hampering the defense or harassing the Defendant).

Finally, the court noted that it was independently aware of another case "in which the State unduly delayed indictment of a P.O.S.T. certified officer."

5

The court then considered evidence offered by Hartsfield suggesting that the State had no just reason for delaying the indictment. In so doing, the court found that the District Attorney's investigation was mostly complete after June 2005, which finding is supported by the record. The court commented on the straightforward nature of the case, arising from what the court termed "a barroom brawl." The court also noted that there were no other factors that would add layers of complexity. For these reasons, the court rightly weighed the reason for the delay against the State.

The court then explained why it would weigh this factor "more strongly" against the State:

> When the State offers no reason for the pre-indictment delay, the Court must conclude that there is no reason. The timely investigation, coupled with the delayed indictment, the beginning emergence of a pattern of delaying indictment of P.O.S.T. certified officers accused of wrongdoing, and the State's position of failing and refusing to offer any explanation for the delay[,] compound to weigh the reason for the delay more strongly against the State.

The court also weighed this blame against the State for the following reason:

> The reason for the delay rests with the State, while the reasons are not so blatantly intended to hamper the [d]efense or gain a tactical advantage, neither are they obviously innocently the result of the press of business.

6

The second factor weighs somewhere in the middle of the spectrum against the State.

As in the first appeal, the State contends the court erred by not weighing this factor relatively benignly against the State because there was no evidence of deliberate delay. "If the delay attributable to the State's preparation of its case is not deliberate but is negligent, it is weighted as a 'relatively benign' factor against the State." *Hartsfield*, 308 Ga. App. at 754 (1) (c). See also *Vermont v. Brillon*, 556 U. S. 81, 90 (II) (129 SC 1283, 173 LE2d 231) (2009) ("'different weights should be assigned to different reasons'") (citation omitted).[2] Moreover, "'where no reason appears for a

_____

[2] The United States Supreme Court has explained,

*Barker* instructs that "different weights should be assigned to different reasons," and in applying *Barker*, we have asked "whether the government or the criminal defendant is more to blame for the delay." Deliberate delay "to hamper the defense" weighs heavily against the prosecution. "[M]ore neutral reasons such as negligence or overcrowded courts" weigh less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Ibid.

(Citations and punctuation omitted.) *Brillon*, supra.

7

delay, we must treat the delay as caused by the negligence of the [S]tate in bringing the case to trial." (Punctuation omitted.) *Hartsfield*, 308 Ga. App. at 754 (1) (c).

But there is some merit in the court's reasoning that there is a difference between having no explanation for prosecutorial delay and refusing to provide one in the face of facts showing that the investigation was largely complete in June 2005, almost four years before indictment. See, e.g., *Jackson v. State*, 272 Ga. 782, 784 (534 SE2d 796) (2000) (although not deliberate, State's delay was not "relatively benign"). This particular issue was not addressed in the trial court's first order or in the first appeal. Furthermore, "[e]ven benign negligence will begin to weigh more heavily against the State, the longer the delay caused by the same." *Hayes v. State*, 298 Ga. App. 338, 345 (2) (b) (680 SE2d 182) (2009).

The State also complains about the trial court's vague reference to another case involving a P.O.S.T. certified officer, of which the court claimed to be aware, as well as a comment about the Fulton County District Attorney's Office. Because the trial court did not mention the latter point in its conclusions, we find no error. With regard to the case involving another P.O.S.T. certified officer, there is no evidence in the

record to support this comment and therefore the court erred in considering this point.[3] Thus, the trial court's ultimate conclusion regarding the reason for delay includes this error. We need not determine whether this error, standing alone, warrants reversal because, as shown below, the court's final conclusion contains other errors.

(d) The third *Barker* factor is the timeliness of the defendant's assertion of the right to a speedy trial. "It is the defendant's responsibility to assert the right to trial, and the failure to exercise that right is entitled to strong evidentiary weight against the defendant." (Citations and punctuation omitted.) *Brannen v. State*, 274 Ga. 454, 456 (553 SE2d 813) (2001); *Phan v. State*, 290 Ga. 588, 595 (1) (c) (723 SE2d 876) (2012). As noted in the first appeal, Hartsfield delayed assertion of the right for over five years from his arrest, until the eve of trial. *Hartsfield*, 308 Ga. App. at 755 (1) (d).

In the first appeal, we found that the trial court improperly considered several circumstances in mitigation of Hartsfield's delay in asserting his right to a speedy trial. *Hartsfield*, 308 Ga. App. at 755 (1) (c). On remand and following the reconvened hearing, the trial court again found that Hartsfield's late assertion of his right was

---

[3] "[I]f a trial court intends to take judicial notice of any fact, it must first announce its intention to do so on the record, and afford the parties an opportunity to be heard regarding whether judicial notice should be taken." (Citation and punctuation omitted.) *Bizzard v. State*, 312 Ga. App. 185, 188 (2) (718 SE2d 52) (2011).

9

mitigated by nine or more such factors. The trial court concluded that Hartsfield's delay in asserting his right must be weighed against him but the mitigating factors "lighten the significant weight this delay would otherwise merit."

The State asserts the trial court erred with regard to three mitigating factors. First, the court stated that following Hartsfield's arrest and before his indictment, he was unrepresented and there was no one to whom he could demand a speedy trial. As to this factor, the trial court did not abuse its discretion. Although "invocation of the speedy trial right need not await 'indictment, information, or other formal charge,'" *Ruffin*, 284 Ga. at 63, "a trial court has the discretion to mitigate the weight given this factor when a defendant fails to assert his right during the period between arrest and indictment if he was out on bond and without counsel," as Hartsfield was here. *State v. Pickett*, 288 Ga. 674, 676 (2) (c) (3) (706 SE2d 561) (2011). See also *Gleaton*, 288 Ga. at 375 (not fatal error where trial court concluded "as a practical matter a defendant on bond is highly unlikely to come forward and demand an indictment be returned against him or that the case be brought before a court for any reason") (punctuation omitted).

The State next contends the trial court erred by finding mitigation in the fact that Hartsfield, while represented by counsel, sent a letter to the court asking that the

10

case be resolved as soon as possible. We agree that a pro se demand for a speedy trial filed while a criminal defendant is represented by counsel "do[es] not constitute a viable demand for a speedy trial"; it may, however, "militate in his favor." (Citations, punctuation and footnotes omitted.) *Ditman v. State*, 301 Ga. App. 187, 194 (2) (c) (687 SE2d 155) (2009). Here, the trial court did not conclude that the letter functioned as a speedy trial demand; rather, the court appears simply to have considered the letter while weighing the third *Barker* factor, which is not impermissible.

Finally, the State contends the court erred by finding evidence of mitigation in the fact that the State delayed production of a final witness list until the eve of trial, despite the court's order to complete discovery. Whether such an action is evidence of mitigation depends on the specific circumstances. See *Williams v. State*, 290 Ga. 24, 27 (3) (717 SE2d 640) (2011) (argument that defendant could not assert his right sooner because discovery was not complete is unavailing). Compare *State v. Shirley*, 311 Ga. App. 141, 146 (3) (c) (714 SE2d 636) (2011) (State ignored trial court's order to reveal confidential informant's identity for almost two years). And here, the court placed only minor emphasis on this point, concluding that "[t]his factor does mitigate the delay somewhat, but not to the degree the Court found in *Shirley*." Thus, any possible error was minor.

11

The court also found several other mitigating factors about which the State does not complain and ultimately concluded that it would weigh the third *Barker* factor against Hartsfield but that the various mitigating factors "lighten the significant weight this delay would otherwise merit." Because we find reversible error with regard to the final factor – prejudice – we need not determine whether any error as to the third factor, standing alone, would merit reversal.

(e) On remand from the first appeal, the trial court found that Hartsfield suffered actual prejudice by the State's delay in the form of "anxiety and concern" and impairment of his defense, two of the three grounds for asserting prejudice under the fourth prong of *Barker*:

> The prejudice inquiry focuses on three central aims of the speedy trial right: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired," the last of which is the most serious.

(Citation omitted.) *Sweatman v. State*, 287 Ga. 872, 875 (6) (700 SE2d 579) (2010). Also, as our Supreme Court has explained, "once the threshold of presumptive prejudice is satisfied, a presumption of prejudice always exists, although it increases in weight over time." (Citations omitted.) *State v. Porter*, 288 Ga. 524, 531 (2) (c) (4) (705 SE2d 636) (2011). "The weight given to the prejudice factor may be bolstered

12

if the defendant can demonstrate some actual impairment to his defense in addition to prejudice that is presumed from the passage of time." Id. at 532 (2) (d). Thus, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." (Citation omitted.) *Doggett*, 505 U. S. at 655 (III) (A).

Absent some unusual showing, the anxiety and concern of an accused that necessarily accompanies serious pending charges is not likely to be determinative in defendant's favor. *Boseman v. State* 263 Ga. 730, 733 (1) (d) (438 SE2d 626) (1994); *Sweatman*, 287 Ga. at 875 (6); *Sechler v. State*, 316 Ga. App. 675 (2) (d) (730 SE2d 142) (2012). Here, the court found that Hartsfield suffered anxiety and concern prior to his indictment because even though he was suspended with pay, he was unable to supplement his income with a second job as he had done pre-arrest, and his career was placed on hold, rendering him ineligible for possible promotion. The court found that he suffered following his indictment because he was fired from his job; unable to obtain regular employment; unable to visit his children in California; unable to pay for his daughters to travel to Georgia to visit; and unable to stay current on his child support obligations, "which can potentially subject him to additional prosecution."

Most of Hartsfield's concerns have been held not to be unusual by this Court and, therefore, do not rise to the level of actual prejudice. Mental anguish, inability to

13

find employment, and inability to leave the state are burdens that are "always present to some extent" and they fall short of establishing an unusual showing. See, e.g., *Watkins v. State*, 267 Ga. App. 684, 686 (d) (600 SE2d 747) (2004) (mental anguish, economic impact, inability to leave state); *Weems v. State*, 310 Ga. App. 590, 595 (2) (d) (714 SE2d 119) (2011) (inability to leave state, employment struggle); *State v. Reimers*, 310 Ga. App. 887, 891 (2) (d) (714 SE2d 417) (2011) (loss of employment, economic difficulties, inability to see children). Compare *Lambert v. State*, 302 Ga. App. 573, 577 (692 SE2d 15) (2010) (even though the fact that defendant "lost two jobs because he had to travel to court on multiple occasions is evidence of anxiety and concern," where defendant "chose not to alleviate his anxiety and concern by filing a speedy trial demand" for five years, he failed to show prejudice) (citations omitted). Given a presumption of prejudice, a showing of actual prejudice is not always necessary; here, however, the trial court based its conclusion on an improper finding of actual prejudice. See *Sechler*, supra at (2) (d); *Reimers*, 310 Ga. App. at 892-893 (2).

Finally, the court found that Hartsfield's defense was impaired by the delay because he was unrepresented for the bulk of the time, and that his "ability to track down patrons who were present has been severely hampered by the passage of time

14

during which [he] had no counsel to investigate, prepare his case and protect his interests." But in the first appeal, we addressed the same point and found that the evidence of prejudice to Hartsfield's defense was insufficient:

> As for the most important third factor, [cit.], the trial court found that the delay impaired Hartsfield's defense because he was without counsel for almost the entire time from the date of his arrest until he appeared at arraignment on October 22, 2009. Therefore, he lacked professional assistance to investigate his case. The court found that Hartsfield's "ability to track down witnesses to the incident has been severely hampered by the passage of time during which Hartsfield had no counsel to prepare his case and protect his interests." This factual finding is not supported by the record. Hartsfield offered no evidence that he was unable to locate witnesses because of the delay. [Cit.] Accordingly, there was no basis for the trial court to conclude that Hartsfield's defense was impaired because of counsel's difficulty in locating witnesses.

*Hartsfield*, 308 Ga. App. at 757 (1) (e). And, even on remand, Hartsfield failed to present evidence that he was unable to locate witnesses because of the delay and failed to offer any other such evidence. Without specific evidence on this point, there is no basis for the trial court to conclude that the delay was *actually* prejudicial to the appellant's defense. See *Porter*, 288 Ga. at 530 (2) (c) (4).

15

"[W]here . . . the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished." *Williams v. State*, 277 Ga. 598, 601 (1) (e) (592 SE2d 848) (2004). Here, given the errors noted above, the trial court could not properly balance the *Barker* factors, and therefore the trial court's order must be vacated and the case remanded "for the trial court to exercise its discretion again using properly supported factual findings and the correct legal analysis, reflected in an adequate written order." (Citations omitted.) *Porter*, 288 Ga. at 534 (2) (e).

*Judgment vacated and case remanded with direction. Miller, P. J., and Ray, J., concur.*